William J. Davis (WD 0362)
SCHEICHET & DAVIS, P.C.
Attorneys for Plaintiffs
767 Third Avenue, 24th Floor
New York, New York 10017
(212) 688-3200



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

JANEL WORLD TRADE, LTD., and ORDER
LOGISTICS, INC.,

                              Plaintiffs,

-vs-

WORLD LOGISTICS SERVICES, INC., RICHARD S.
FRANCIS, and BRIAN P. GRIFFIN,

                              Defendants.

------------------------------------------------------------X

ECF CASE

Case No. _____

COMPLAINT AND
JURY DEMAND

Plaintiffs Janel World Trade, Ltd. ("Janel") and Order Logistics, Inc. ("Newco"), both Nevada corporations, by their attorneys, Scheichet & Davis, P.C., as and for their Complaint against the Defendants state as follows:

### SUMMARY AND NATURE OF THE ACTION

1.     Plaintiff's Janel and Newco bring this action arising out of the fraudulent activities and material breaches of contract by defendants World Logistics Services, Inc. ("World Logistics"), a Delaware Corporation formerly known as "Order Logistics, Inc.;" Richard S. Francis ("Francis"), the President of World Logistics; and Brian P. Griffin ("Griffin"), the Chief Executive Officer of World Logistics, by which they induced the Plaintiffs purchase of "exclusive" rights to certain World Logistics assets when, in fact, World Logistics and Francis had compromised the exclusivity by having secretly granted the right to use or absorb those assets to a third party creditor named Braddock Cunningham ("Cunningham"). Defendants

1

51843-3

made false and misleading statements of material facts to the Plaintiffs concerning the exclusivity of the rights to assets which Defendants offered and sold to the Plaintiffs, most notably by concealing and withholding their agreement with Cunningham (the "Cunningham Agreement"), made only two days before the closing of the asset sale, in which they agreed to the cancellation of a restrictive covenant which had barred Cunningham from using World Logistics proprietary computer software, or soliciting its list of valuable customers and the World Logistics employees operating out of their Greenville, South Carolina office, which were the most valuable assets and "exclusive" rights which the Plaintiffs were purchasing from World Logistics.

2. Defendants made false and misleading statements, and omitted material information, with the specific intent to defraud the Plaintiffs and obtain for their own use and benefit 285,000 shares of newly authorized Class B convertible preferred stock of Janel (the "Class B Shares," each share convertible into 10 shares of Janel common stock) with a current value of approximately $3,700,000, together with payment by Janel of Defendants long overdue debts amounting to more than $2,300,000, and $125,000 to Griffin. Plaintiffs have been damaged in an amount to be determined at trial, which they believe to be not less than $2,925,000.

3. Plaintiffs assert causes of action identified below against the Defendants, jointly and severally, pursuant to §10(b) of the Securities Exchange Act oF 1934, 15 U.S.C. §78j(b) (the "1934 Act"); Rule 10b-5 promulgated thereunder, 17 C.F.R. §240; and 1934 Act §20(a), 15 U.S.C. §78t. Plaintiffs also assert common law causes of action against the Defendants for Fraud, Breach of Contract and the Implied Covenant of Good Faith and Fair Dealing, Conversion, and Unjust Enrichment.

51843-3

## THE PARTIES

4.    Plaintiff Janel is a Nevada Corporation with its principle place of business in Jamaica, New York, close to J.F.K. International Airport. Janel has been in business since 1974 as a logistics services provider for importers and exporters worldwide. Janel is a Securities and Exchange Commission ("SEC") reporting company which has been publically-held since July 2002, with its common stock traded on the NASDAQ-administered Over-The-Counter Bulletin Board. Newco is a Nevada Corporation and wholly-owned subsidiary of Janel, which purchased assets and the freight logistics operations of World Logistics, including but not limited to its proprietary computer software for the freight logistics business, its customer list, and its lease-hold offices in Champaign, Illinois and Greenville, South Carolina. Newco acquired the corporate and trade name "Order Logistics, Inc." from World Logistics, and has since changed its name to "Order Logistics, Inc."

5.    Upon information and belief, World Logistics is a Delaware corporation incorporated in 2006 (with its principle place of business located at 3 Crafton Square, Pittsburgh, Pennsylvania 15205), which had been in the business of arranging transportation of goods for various companies utilizing sophisticated proprietary computer software to provide to each customer with constant visibility, information and control over their unique distribution networks by the utilization of the customer's existing information systems to obtain access to all of this information. World Logistics has been a non-reporting publically-held company since December 2005, with its common stock traded on the Pink Sheets market.

6.    At all relevant and material times;

(a) Defendant Francis has been the President and a principle shareholder of World Logistics, with his principle place of business at 3 Crafton Square, Pittsburgh, Pennsylvania 15205, and

(b) Defendant Griffin has been the Chief Executive Officer and a principal shareholder of World Logistics, with his principal place of business in Champaign, Illinois.

7. Upon information and belief, Francis continues operating World Logistics in a trucking company related transportation business in areas which do not involve the various assets and "exclusive" rights which World Logistics sold to the Defendants.

8. Upon information and belief, Plaintiffs allege that each Defendant is the agent and/or conspirator of the other Defendant, and knowingly approved, participated in, and/or ratified the wrongful actions and omissions herein alleged, and are thus mutually responsible for the wrongful conduct of each other.

## JURISDICTION AND VENUE

9. This is an action for money damages, cancellation of Class B Shares, and other appropriate relief arising, among other statutes, under §10(b) and Rule 10b-5 of the 1934 Act, 15 U.S.C. §78j(b), and 1934 Act §20(a), 15 U.S.C. §78t. This court has original, federal question jurisdiction over the claims arising under these Federal statutes pursuant to 28 U.S.C. §1331, and supplemental jurisdiction over all remaining claims pursuant to 28 U.S.C. §1367. Alternatively, this court has jurisdiction based upon diversity of citizenship pursuant to 28 U.S.C. §1332, as well as the principles of the pendent jurisdiction. The wrongdoing of the Defendants which is alleged herein took place in New York County and Queens County, and included the use of the means and instrumentalities of interstate commerce. Moreover, Section 11.2 of the Asset Purchase Agreement dated October 18, 2007 by and among Janel, Newco, and World Logistics

(the "Purchase Agreement") provides that all disputes or legal actions or proceedings arising out of, or based upon, or in connection with that Purchase Agreement must be brought only in the State and Federal courts located in New York County, and each party covenanted and agreed to not dispute such jurisdiction or venue, and explicitly consented to the personal jurisdiction of such courts.

10. Venue lies in this District pursuant to 28 U.S.C. §1391, in that (a) most of the Defendants wrongful acts occurred within this District, (b) during all material times, the Defendants were present in the Southern District of New York, transacted business in this District and frequently traveled to and from this District for the conduct of business, and (c) the Defendants knowingly and irrevocably consented to jurisdiction and venue in this District.

## FACTS AND ALLEGATIONS
## COMMON TO ALL CAUSES OF ACTION

11. Janel was introduced to World Logistics (then named "Order Logistics") in or about August 2006, and the two companies negotiated and executed a "Strategic Memorandum of Understanding" which was designed to benefit both companies by marketing joint global supply-chain capabilities to both companies' customers, whereby Janel would be able to provide freight logistics services to its own customers, and certain World Logistics customers, utilizing sophisticated and proprietary World Logistics computer software (the "Proprietary Logistics Software") which enabled Janel and the customers to track the entire process and progress of the supply chain in the manufacturing, packaging, shipping and delivery of the goods being manufactured overseas and distributed in the U.S.

12. In early August 2007, Janel and World Logistics pursued a transaction between them in which Janel and Newco would purchase the exclusive rights to certain proprietary assets of World Logistics comprised principally of the Proprietary Logistics Software, the customer list,

5

51843-3

and the Champaign, Illinois and Greenville, South Carolina offices and staff.

13. During the course of the negotiations between Janel and World Logistics, and the many conversations by telephone, in person, and by email and fax messages, Francis repeatedly represented to the Janel officers, directors and advisors that Janel would receive exclusive rights to the assets being purchased from World Logistics.

14. In the course of Janel's due diligence review of the business records and financial material of World Logistics, Janel learned of a number of liens resulting from financing agreements and overdue obligations owed by World Logistics to a number of suppliers, banks, financing companies, and the Internal Revenue Service (for unpaid and overdue payroll taxes) aggregating approximately $2,300,000.

15. Upon information and belief, Francis and Griffin were "responsible officers" of World Logistics who were personally liable for the unpaid and overdue payroll taxes; and personal guarantors of various World Logistics debt obligations including, but not limited to, a $648,000 debt owed to the National Bank of South Carolina by World Logistics.

16. Upon information and belief, the Proprietary Logistics Software had been developed by a company named eBridge Technologies, Inc. ("eBridge"), which World Logistics had acquired as a subsidiary pursuant to agreements with Cunningham and others dated June 1, 2006 and December 20, 2006 (collectively, the "Cunningham Agreements").

17. Upon information and belief, Cunningham had filed a Uniform Commercial Code ("UCC") financing statement lien in South Carolina against all of the assets of World Logistics in October 2006.

18. Upon information and belief, World Logistics breached the Cunningham Agreements, with resulted in Cunningham declaring a default.

6

51843-3

19.     On or before October 5, 2007, World Logistics, Francis, Griffin, and their attorneys and advisors had received and reviewed the draft Purchase Agreement which, in Articles 2.1, 2.7, 2.8, 2.12, 4.7, 4.19, 4.22 and other provisions, explicitly and repeatedly required that all outstanding liens had to be satisfied and released, and all of the assets and rights being conveyed to Plaintiffs were to be *exclusive and without any conflicting use* (emphasis supplied), and that World Logistics had no knowledge of any claims, infringements, or conflicting use by any person.

20.     On October 5, 2007, Janel received a letter from Cunningham's lawyer (the "Cunningham Letter") asserting material default by World Logistics in compliance with the Cunningham Agreements, a UCC security interest in all of the World Logistics assets, knowledge of the pending Purchase Agreement, and a demand that no transaction be consummated without Cunningham's consent.

21.     Janel immediately advised World Logistics, Francis, Griffin, and their attorneys of the Cunningham letter by email.

22.     Defendants replied to the Janel email message within minutes, and advised its officers that the dispute with Cunningham would be promptly resolved, and the lien would be lifted.

23.     On October 10, 2007, Janel received a copy of an email from Francis to the lawyers for World Logistics, Griffin, Cunningham, and others saying that there was a settlement agreement with Cunningham (the "Cunningham Settlement").

24.     On October 12, 2007, Janel received a copy of an email sent by the lawyer for World Logistics to Cunningham's lawyer asking for confirmation that he could file the lien release upon Cunningham receiving a payment of $7,500 and 30,000 Class B Shares of Janel,

which was followed seven minutes later by a copy of a confirming email from Cunningham's lawyer.

25. Neither World Logistics, nor Francis or Griffin or any other officer, director, attorney or representative of World Logistics, provided any other information to Janel or any officer or representative of Janel regarding the terms and provisions of the Cunningham Settlement prior to the closing of the Purchase Agreement on October 18, 2007.

26. In fact, the Cunningham Settlement was executed on or about October 10, 2007, and in addition to the payment of $7,500 and 30,000 Class B Shares of Janel, the agreement granted Cunningham rights to the World Logistics intellectual property, trade names, and its customer list and contacts, which it had promised to sell exclusively to Newco:

> 4. OLI also agrees that Cunningham shall have the nonexclusive right to use for any purpose the "eBridge" name and any goodwill associated therewith, eBridge's intellectual capital to include eBridge's software solutions, including the right to the techniques used to create the software deployed at eBridge, Inc. The parties expressly acknowledge and agree that Cunningham may develop new software that is related to eBridge's software solutions and that any intellectual property rights arising therefrom are the exclusive property of Cunningham. OLI acknowledges and agrees that it has no intellectual property rights to any software developed by Cunningham after the Effective Date of this Agreement and is not granted a license thereto.
>
> 5. OLI further acknowledges that it has already released Cunningham from any and all agreements not to compete in the December 20, 2006 agreement and that Cunningham is free to compete directly with OLI in any market or business, including but not limited to, soliciting OLI's customers, suppliers, and employees.

27. The Defendants knew, or should have known in the exercise of reasonable diligence, that these provisions of the Cunningham Settlement destroyed the exclusivity of the intellectual property rights and customer list which were sold "exclusively" to Janel a few days later.

51843-3

28. Upon information and belief, this material information was knowingly and intentionally hidden from Janel and its representatives prior to the signing and closing of the Purchase Agreement, which constitutes an intentional violation of the material terms of the Purchase Agreement and the World Logistics representations and warrantees.

29. Janel first learned of these events from an email sent to Janel by Cunningham on December 10, 2007 regarding claims he has against World Logistics and Francis.

30. World Logistics, Francis and Griffin intentionally deceived Janel's officers into believing that it would have acquired the exclusive rights to all of the World Logistics intellectual property, computer software, source codes, trade names, brand names and, most importantly, its customer list and contacts.

31. When Janel sent its personnel to the Greenville South Carolina office of World Logistics which was acquired pursuant to the Purchase Agreement, it found out that all of the World Logistics employees of that office, and the World Logistics customers of that office had been acquired by Cunningham since October Cunningham Settlement.

### AS AND FOR A FIRST CLAIM FOR RELIEF
### AGAINST WORLD LOGISTICS, FRANCIS AND GRIFFIN
(§10(b) and Rule 10(b)(5) of the 1934 Act)

32. Defendants World Logistics, Francis and Griffin misrepresented and omitted material facts, as described above, in connection with Defendants' acquisition of Janel securities by fraudulently inducing Plaintiffs' purchase of World Logistics assets.

33. At the time Defendants World Logistics, Francis and Griffin made their misrepresentations and omissions to Plaintiffs, they knew or should have known that those misrepresentations were materially false and misleading and that the information omitted was material; they made those misrepresentations and omissions with the specific intent that

9

Plaintiffs reasonably rely upon them; Plaintiffs did, in fact, reasonably rely upon the statements; and were directly injured as a result.

34. By reason of the foregoing, Plaintiffs have sustained damages in an amount to be determined at trial, but in excess of $1,000,000.00.

35. Defendants World Logistics, Francis and Griffin knowingly violated §10(b) and Rule 10(b)(5) in connection with the fraud they perpetuated upon Plaintiffs involving Defendants acquisition of the Class B Shares of Janel in consideration for the Plaintiffs' purchase of World Logistics assets, therefore pursuant to 15 U.S.C. §78u-4(f)(2)(A), Defendants World Logistics, Francis and Griffin are liable for Plaintiffs' damages, as herein alleged.

### AS AND FOR A SECOND CLAIM FOR RELIEF
### AGAINST DEFENDANTS WORLD LOGISTICS, FRANCIS AND GRIFFIN
(§20(a) of the 1934 Act)

36. Defendant World Logistics, by and through its senior executives and principals, were able to and did control, directly or indirectly, the statements and actions of Defendants World Logistics, Francis and Griffin in connection with the fraud they perpetrated involving Plaintiffs' purchase of World Logistics assets.

37. With knowledge of the falsity of the statements and actions by World Logistics, Francis and Griffin contained herein, and/or in reckless disregard of such statements and actions by Defendants World Logistics, Francis and Griffin to Plaintiffs, World Logistics, Francis and Griffin caused or controlled the misstatements and omissions of material facts as alleged herein and therefore, pursuant to §20(a) of 15 U.S.C.§78t(a), World Logistics, Francis and Griffin are jointly and severally liable for Plaintiffs' damages, as herein alleged.

51843-3

### AS AND FOR A THIRD CLAIM FOR RELIEF
### AGAINST DEFENDANTS WORLD LOGISTICS, FRANCIS AND GRIFFIN
(Common Law Fraud)

38. As a result of Defendants World Logistics, Francis and Griffin fraud and materially misleading statements knowingly and intentionally made to Plaintiffs in connection with inducing Plaintiffs to issue Class B Shares of Janel to the Defendants, Defendants World Logistics, Francis and Griffin committed common law fraud, and are therefore jointly and severally liable for Plaintiffs' damages proximately caused thereby as herein alleged.

### AS AND FOR A FOURTH CLAIM FOR RELIEF
### AGAINST DEFENDANTS WORLD LOGISTICS, FRANCIS AND GRIFFIN
(Conversion)

39. The Defendants wrongfully exercised dominion and control over Plaintiffs' property, and otherwise unlawfully converted for their own use and benefit the Class B Shares of Janel and monies which belonged to Plaintiffs, and which Defendants fraudulently induced Plaintiffs to deliver to them, all to Plaintiffs' detriment.

40. Plaintiffs are informed and believe, and thereon allege, that the acts of these Defendants alleged herein were done willfully, maliciously and intentionally, with a willful and conscious disregard of Plaintiffs' rights, and with the specific intent to defraud Plaintiffs.

### AS AND FOR A FIFTH CLAIM FOR RELIEF
### AGAINST ALL DEFENDANTS WORLD LOGISTICS, FRANCIS AND GRIFFIN
(Unjust Enrichment)

41. Defendants unjustly enriched themselves by defrauding Plaintiffs in connection with the Plaintiffs purchase of World Logistics assets, and by fraudulently inducing them to transfer Class B Shares of Janel and money to, and for the benefit of, the Defendants.

42. Under the circumstances, it would be manifestly unjust and inequitable for these

Defendants to profit as a result of Plaintiffs' losses in connection with the Defendants acts, practices and courses of conduct regarding the transactions described in this Complaint, and this court should enter an order and judgment cancelling the Class B Shares issued to the Defendants and, assessing damages against the Defendants together with with interest.

### AS AND FOR A SIXTH CLAIM FOR RELIEF
### AGAINST DEFENDANTS WORLD LOGISTICS, FRANCIS AND GRIFFIN
(Breach of Covenant of Good Faith & Fair Dealing)

43. Plaintiffs entered into the Purchase Agreement with World Logistics, whereby World Logistics, Francis and Griffin undertook the obligation to act in good faith and deal fairly with the Plaintiffs in connection with the above-described transactions.

44. By reason of the acts, practices and courses of conduct set forth above, including without limitation the misrepresentations and omissions of material facts concerning World Logistics and the Cunningham Settlement, World Logistics, Francis and Griffin breached their duty of good faith and fair dealing and are thus liable to the Plaintiffs for money damages and cancellation of Class B Shares of Janel in amounts to be proved at trial, but no less than $1,000,000 and 181,500 Class B Shares of Janel.

### AS AND FOR AN SEVENTH CLAIM FOR RELIEF
### AGAINST DEFENDANTS WORLD LOGISTICS, FRANCIS AND GRIFFIN
(Punitive Damages)

45. Plaintiffs are informed and believe, and thereon allege, that the acts, practices and courses of conduct of the Defendants alleged herein in Plaintiffs' First, Second, Third, Fourth and Fifth claims for relief were done willfully, maliciously and intentionally, with a willful and conscious disregard of Plaintiffs' rights, and with the specific intent to defraud Plaintiffs. Plaintiffs are therefore entitled to punitive damages according to proof at trial.

51843-3

WHEREFORE, Plaintiffs demand judgment against the Defendants, jointly and severally, as follows:

A. On the First, Second, Third, Fourth, Fifth and Sixth Claims for Relief, damages comprised of money damages and cancellation of Class B Shares of Janel in amounts to be proved at trial, but no less than $1,000,000 and 181,500 Class B Shares of Janel, together with interest running from the date of the first fraudulent act by the Defendants;

B. On the Seventh Claim for Relief, punitive damages in an amount to be determined at trial; and

C. On all Claims for Relief, an award in Plaintiffs' favor of all of the costs and expenses incurred by them in their prosecution of this action including, but not limited to, their reasonable attorneys' fees, together with such further and other relief as to this Court is just, fair and equitable.

## JURY DEMAND

Defendants hereby demand a trial by jury on all issues of fact.

Dated: New York, New York
February 8, 2008

                                                                      Yours, etc.

                                                                      SCHEICHET & DAVIS, P.C.
                                                                      Attorneys for Plaintiffs

By: _____
                                                                      William J. Davis (WD-0362)
                                                                      767 Third Avenue - 24th Floor
                                                                      New York, New York 10017
                                                                      (212) 688-3200

51843-3