UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
JANEL WORLD TRADE, LTD., and
ORDER LOGISTICS, INC.,                                    08-CV-01327 (RJS)

        Plaintiffs,

   -against-

WORLD LOGISTICS SERVICES, INC.,
RICHARD S. FRANCIS, and
BRIAN P. GRIFFIN,                                          ECF Case

        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


MEMORANDUM OF LAW SUBMITTED BY DEFENDANT
BRIAN P. GRIFFIN IN SUPPORT OF HIS MOTION TO DISMISS
THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6) AND 9(B)


HUTNER KLARISH LLP
Attorneys for Defendant Brian P. Griffin
1359 Broadway, Suite 2001
New York, New York 10018
212-391-9235

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................... iii

PRELIMINARY STATEMENT .......................................................................................1

SUMMARY OF ALLEGATIONS ...................................................................................1

SUMMARY OF ARGUMENT ........................................................................................4

      1.  Securities Fraud Claims ...................................................................................4

      2.  State Law Claims. ............................................................................................4

ARGUMENT .....................................................................................................................5

I.  PLAINTIFFS' 10b-5 AND CONTROLLING PERSONS CLAIMS
SHOULD BE DISMISSED BECAUSE THERE WERE NO
MISREPRESENTATIONS OR OMISSIONS "IN CONNECTION WITH"
A PURCHASE OR SALE OF SECURITIES. ....................................................5

    A.  No Misrepresentations or Omissions Were Made "In Connection
With" the Purchase or Sale of Securities. ...............................................5

    B.  The Complaint Fails to Allege Loss Causation. .......................................9

II.  THE COMPLAINT DOES NOT PLEAD COMMON LAW FRAUD
AGAINST DEFENDANT GRIFFIN. ...............................................................11

    A.  Plaintiffs Have Not Pled Facts Giving Rise To A Duty To Disclose ...................12

    B.  Griffin's Alleged Omission Also Cannot Form a Basis For a Fraud
Claim Because Plaintiffs Could Not Have Reasonably Relied
Thereon. .................................................................................................13

III.  THE 10b-5 AND COMMON LAW FRAUD CLAIMS FAIL TO SATISFY
THE REQUIREMENTS OF PSLRA AND/OR FAIL TO ALLEGE FRAUD
WITH THE REQUISITE PARTICULARITY UNDER FED. R. CIV. P.
9(b). ...................................................................................................................14

IV.  PLAINTIFFS' REMAINING STATE LAW CLAIMS SHOULD ALL BE
DISMISSED BECAUSE THEY FAIL TO ALLEGE THE NECESSARY
ELEMENTS OF EACH CLAIM. ......................................................................17

    A.  Plaintiffs Have Not Alleged Wrongful Exercise of Dominion
Required to Establish a Claim for Conversion. .....................................17

B.   The Unjust Enrichment Claim Should be Dismissed Because It Is
Precluded by the Asset Purchase Agreement, Which Governs the
Subject Matter of This Dispute. ............................................................................18

C.   The Claim for Breach of Covenant of Good Faith and Fair Dealing,
As Against Griffin, Should be Dismissed Because He Was Not a
Party to the Asset Purchase Agreement. ...............................................................18

CONCLUSION....................................................................................................................19

TABLE OF AUTHORITIES

**Cases**

**Page**

380544 Canada, Inc. v. Aspen Technology, Inc.,
    2008 U.S. Dist. LEXIS 20968 (S.D.N.Y. March 18, 2008) ................................................5, 15

Aaron Ferer & Sons, Ltd. v. Chase Manhattan Bank  N.A.,
    731 F.2d 112 (2d Cir. 1984)...................................................................................................11

American Medical Ass'n v. United Healthcare Corp.,
    2007 U.S. Dist. LEXIS 18729 (S.D.N.Y. 2007)....................................................................18

Bochicchio v. Smith Barney, Harris Upham & Co.,
    647 F. Supp. 1426 (S.D.N.Y. 1986).........................................................................................7

Catton, et al. v. Defense Technology Systems, Inc., et al.,
    2006 U.S. Dist. LEXIS 205 (S.D.N.Y. Jan. 3, 2006) ............................................................15

Chemical Bank v. Arthur Andersen & Co.,
    726 F.2d 930, 943 (2d Cir.), cert. denied, 469 U.S. 884 (1984) ....................................6, 8 n. 5

Citibank, N.A. v. K-H Corp.,
    745 F. Supp. 899 (S.D.N.Y. 1990)...........................................................................................8

Dover Ltd. v. A.B. Watley, Inc.,
    423 F. Supp. 2d 303 (S.D.N.Y. 2006).....................................................................................17

Dresner v. Utility.com, Inc.,
    371 F. Supp. 2d 476 (S.D.N.Y. 2005).....................................................................................16

Frontier-Kemper Constructors, Inc. v. Am. Rock Salt Co.,
    224 F. Supp. 2d 520 (W.D.N.Y. 2002) ...................................................................................11

Granite Partners, L.P. v. Bear, Stearns & Co.,
    17 F. Supp. 2d 275 (S.D.N.Y. 1998).................................................................................13, 16

Grumman Allied Indus., Inc. v. Rohr Indus., Inc.,
    748 F.2d 729 (2d Cir. 1984)..............................................................................................12, 13

In re Alstom SA Sec. Litig.,
    2005 U.S. Dist. LEXIS 35641 (S.D.N.Y. Dec. 22, 2005) .......................................................9

In re Crude Oil Commodity Litig.,
    2007 U.S. Dist. LEXIS 47902 (S.D.N.Y. June 28, 2007) ......................................................16

In re Initial Public Offering Sec. Litig.,
    241 F. Supp. 2d 281 (S.D.N.Y. 2003)....................................................................14

Lattanzio v. Deloitte & Touche LLP,
    476 F.3d 147 (2d Cir. 2007)..............................................................................9

Lentell v. Merrill Lynch & Co.,
    396 F.3d 161 (2d Cir.), cert. denied, 546 U.S. 935, 126 S. Ct. 421 (2005) .........................9-10

Mfrs. Hanover Trust Co. v. Smith Barney, Harris Upham & Co.,
    770 F. Supp. 176 (S.D.N.Y. 1991).................................................................6, 8 n. 5

Nasik Breeding & Research Farm Ltd. v. Merck & Co.,
    165 F. Supp. 2d 514 (S.D.N.Y. 2001)............................................................11, 16

Production Resource Group, L.L.C. v. Stonebridge Partners Equity Fund, L.P.,
    6 F. Supp. 2d 236 (S.D.N.Y. 1998)............................................................ 7-8, 8 n. 4

SEC v. Drysdale Securities, Inc.,
    785 F.2d 38 (2d Cir. 1986)...........................................................................8 n. 5

Silver v. NL Industries, Inc.,
    1984 U.S. Dist. LEXIS 17287 (S.D.N.Y. April 25, 1984) ........................................19

Sonds v. St. Barnabas Hosp. Corr. Health Servs.,
    151 F. Supp. 2d 303 (S.D.N.Y. 2001)...................................................................5

State v. Seventh Regiment Fund, Inc.,
    98 N.Y.2d 249, 746 N.Y.S.2d 637 (2002) .............................................................17

Superintendent of Ins. of New York v. Bankers Life and Casualty Co.,
    404 U.S. 6, 92 S. Ct. 165 (1971)......................................................................8 n. 5

The Dweck Law Firm, L.L.P. v. Mann,
    340 F. Supp. 2d 353 (S.D.N.Y. 2004)..................................................................19

Warner Theatre Assocs. Ltd. Partnership v. Metropolitan Life Insurance Co.,
    1997 U.S. Dist. LEXIS 17217 (S.D.N.Y. Nov. 14, 1997)....................................18, 19

York v. Association of the Bar of the City of New York,
    286 F.3d 122, 125 (2d Cir.), cert. denied, 537 U.S. 1089 (2002) ................................5

**Statutes and Rules**

Securities Exchange Act of 1934, §10(b), 15 U.S.C. 78j ......................................1, 5, 7

Securities Exchange Act of 1934, §20(a) 15 U.S.C. 78t..........................................................4, 5, 9

Rule 10b-5, 17 C.F.R. § 240.10b-5.............................................................................. 4, 5, et seq.

Private Securities Litigation Reform Act (PSLRA), 15 U.S.C. § 78u-4(b)(1), (b)(2)..................14

Fed. R. Civ. P. 12(b)(6)........................................................................................................1, 5, 13

Fed. R. Civ. P. 9(b) ............................................................................................................1, 14, 15

MEMORANDUM OF LAW SUBMITTED BY DEFENDANT
BRIAN P. GRIFFIN IN SUPPORT OF HIS MOTION TO DISMISS
THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6) AND 9(b)

Defendant Brian P. Griffin, by his attorneys Hutner Klarish LLP, submits this memorandum of law in support of his motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim, and pursuant to Fed. R. Civ. P. 9(b) for failure to plead the two fraud claims with sufficient particularity.

PRELIMINARY STATEMENT

In this action, plaintiffs allege that all of the defendants committed securities fraud, common law fraud, converted plaintiffs' property, breached the covenant of good faith and fair dealing, and were unjustly enriched in connection with an Asset Purchase Agreement entered into by plaintiff Janel World Trade, Ltd. and defendant World Logistics Services, Inc. However, because plaintiffs' 10b-5 claim fails to allege fraud "in connection with the purchase or sale of a security," and because of other deficiencies with that claim and with the remaining state law claims, defendant Griffin submits this motion to dismiss.

SUMMARY OF ALLEGATIONS

For purposes of this motion to dismiss, defendants are required to accept the truth of the allegations set forth in the Complaint. To help understand the arguments made in this motion, however, we summarize and organize the pertinent allegations below.[1]

Plaintiff Janel World Trade, Ltd. ("Janel") is a logistics services provider for importers and exporters worldwide. Defendant World Logistics Services, Inc. ("World Logistics " or "WLS") has been engaged in a related area, namely, the "the business of arranging transportation of goods for various companies using sophisticated proprietary software…." Complaint ¶¶ 4, 5.

---

[1] A copy of the Complaint is attached as Exhibit A to the accompanying Affidavit of Eric S. Hutner, dated May 22, 2008 ("Hutner Aff.").

The two companies began a mutually beneficial business relationship in August 2006. Id. ¶ 11. During the time period relevant hereto, defendants Richard S. Francis and Brian P. Griffin are alleged to have been, respectively, the President and Chief Executive Officer of WLS. Id. ¶ 6.

In August 2007, the companies began negotiations that would enable Janel to acquire "certain proprietary assets of World Logistics comprised principally of the Proprietary Logistics Software, the customer list, and the Champaign, Illinois and Greenville, South Carolina offices and staff." Id. ¶ 12. The Complaint further alleges that defendant Francis represented to plaintiffs that they "would receive exclusive rights to the assets being purchased from World Logistics." Id. ¶ 13.

These negotiations resulted in an Asset Purchase Agreement, dated October 18, 2007 (the "Asset Purchase Agreement"), between Janel and WLS.[2] Among other things, the contract provided that Janel was purchasing the "exclusive rights" to the assets being acquired. Complaint ¶¶ 1, 27. The consideration for the assets acquired by plaintiffs consisted of the assumption of certain WLS debts, stock to be issued by Janel to various persons, and payment of $85,000 to defendant Francis at closing, and of $125,000 to defendant Griffin on March 30, 2008. Asset Purchase Agreement § 3.1.

While conducting due diligence before the contact was signed, Janel was informed that there were a number of liens against World Logistics' assets, including one on all of World Logistics' assets held by Brad Cunningham (the "Cunningham Lien"). Plaintiffs also learned from a letter sent directly to them by Cunningham's attorney that there were certain extant disputes between Cunningham and World Logistics. Complaint ¶¶ 14, 16, 20. The Cunningham

---

[2] A copy of the Asset Purchase Agreement is attached as Exhibit B to the Hutner Aff. At the time the Asset Purchase Agreement was signed, the actual name of the defendant seller (sued herein as World Logistics Services, Inc.) was "Order Logistics, Inc." In this motion, we shall use the name used by plaintiffs in the Complaint when referring to the seller.

Lien and the related disputes arose out of the sale of a company sold by Cunningham to World Logistics in 2006, eBridge Technologies, Inc. ("eBridge"). Thereafter, "defendants" notified Janel in an email that the disputes with Cunningham would be resolved and that the Cunningham Lien would be released before the contract was signed. Id. ¶ 22. Janel was subsequently informed that a settlement between WLS and Cunningham had been reached, and that the Cunningham Lien would be released, which was confirmed in an email that Janel received directly from Cunningham's lawyer. Id. ¶¶ 23-24. The agreement between World Logistics and Cunningham was memorialized in a settlement agreement, dated October 10, 2007 (the "Cunningham Settlement"), and plaintiffs were immediately informed of the settlement and the release of the liens. Id. ¶¶ 23-24. Apparently, plaintiffs did not see, or ask to see, a copy of the Cunningham Settlement before the Asset Purchase Agreement was signed on October 18, 2007, and it is alleged that none of the defendants provided any other information to plaintiffs regarding the terms of the Cunningham Settlement. Id. ¶ 25. The Complaint does not allege that any of the consideration to be paid to defendant Griffin, consisting of one cash payment and shares of Janel stock, was ever paid or delivered.[3]

Plaintiffs further allege that they learned on December 10, 2007 that the Cunningham Settlement (which they had not seen before executing the Asset Purchase Agreement) granted Cunningham the rights to the eBridge "intellectual property, trade names, and its customer list and contacts, which [WLS] had promised to sell exclusively to [plaintiffs]." Id. ¶ 26. Because such rights would interfere with the plaintiffs' alleged exclusive rights in the assets acquired from World Logistics, plaintiffs assert that they were damaged thereby. Based on such alleged

---

[3] In fact, due to the failure to deliver the cash and stock due under the Asset Purchase Agreement, and for other reasons as well, Mr. Griffin intends to assert claims against plaintiffs at the earliest opportunity.

misconduct, plaintiffs assert claims under Section 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5, and assert four state law causes of action.

SUMMARY OF ARGUMENT

1. Securities Fraud Claims: Plaintiffs purchased, and World Logistics sold, some but not all of a company's business assets. The sole predicate for the alleged securities fraud is that part of the consideration paid for those assets were shares of stock issued by plaintiff Janel, so that plaintiffs in effect claim that, as a result of defendants' misrepresentations and omissions, they overpaid for the assets which they bought. However, because the alleged misrepresentations and omissions do not pertain to any securities, or to the value of the securities used to pay part of the purchase price for the assets, the Complaint fails to allege fraud "in connection with" the purchase or sale of securities. The 10b-5 claim also fails to plead loss causation and fraud with the requisite degree of particularity, at least as against defendant Griffin.

2. State Law Claims: Each of the four state law claims are deficient as a matter of law: (a) The claim for common law fraud is deficient (i) because it failed to allege that defendant Griffin had a duty to disclose the allegedly non-disclosed material information, (ii) because the omission in question cannot form the basis for a fraud claim against Griffin because plaintiffs cannot allege reasonable reliance thereon, and (iii) for failure to plead with particularity; (b) The claim for conversion is deficient because there is no allegation that any property belonging to plaintiffs was ever delivered to defendant Griffin or that he exercised wrongful dominion with respect thereto; (c) The claim for unjust enrichment is precluded by the existence of the Asset Purchase Agreement, which governs the subject matter of this dispute; and (d) The claim for breach of covenant of good faith and fair dealing is deficient because such a claim can only be asserted against a contracting party, and Griffin was not party to the Asset Purchase Agreement.

<u>ARGUMENT</u>

I.   PLAINTIFFS' 10b-5 AND CONTROLLING PERSONS CLAIMS SHOULD BE
     DISMISSED BECAUSE THERE WERE NO MISREPRESENTATIONS OR
     OMISSIONS "IN CONNECTION WITH" A PURCHASE OR SALE OF SECURITIES.

     To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint "must

allege facts which, assumed to be true, confer a judicially cognizable right of action." <u>York v.</u>

<u>Association of the Bar of the City of New York</u>, 286 F.3d 122, 125 (2d Cir.), <u>cert. denied</u>, 537

U.S. 1089 (2002). The complaint must "contain either direct or inferential allegations respecting

all the material elements necessary to sustain a recovery under some viable legal theory." <u>Sonds</u>

<u>v. St. Barnabas Hosp. Corr. Health Servs.</u>, 151 F. Supp. 2d 303, 308 (S.D.N.Y. 2001) (citations

omitted). If plaintiffs fail to allege an element necessary to obtain relief, dismissal is in order,

and in ruling on a motion to dismiss, "the court is not required to accept as true conclusory

allegations or 'a legal conclusion couched as a factual allegation.'" <u>380544 Canada, Inc. v.</u>

<u>Aspen Technology, Inc.</u>, 2008 U.S. Dist. LEXIS 20968 at *31 (S.D.N.Y. March 18, 2008)

(citations omitted).

     The securities fraud claim asserted pursuant to Section 10(b) of the Securities Exchange

Act of 1934 (the "Exchange Act"), 15 U.S.C. 78j, and Rule 10b-5 thereunder, 17 C.F.R. §

240.10b-5, and the controlling persons liability claim under Section 20(a) of the Exchange Act,

15 U.S.C. 78t, should be dismissed because none of the alleged misrepresentations or omissions

were made "in connection with" the purchase or sale of any securities, and because the

Complaint fails to allege loss causation.

     A.   No Misrepresentations or Omissions Were Made "In Connection With" the Purchase
          or Sale of Securities.

     The Complaint alleges that plaintiffs purchased, and World Logistics sold, certain of

World Logistics' business <u>assets</u>, and that they overpaid for them as a result of defendants'

misrepresentations and omissions. As such, the sole lever by which plaintiffs try to squeeze the "round peg" of this claim in the "square hole" of Rule 10b-5 is the fact that part of the consideration paid for those assets was stock issued by plaintiffs. However, the alleged misrepresentations and omissions do not refer or pertain to any securities or to the value of the securities used to pay part of the purchase price for the assets. Thus, while the Complaint alleges that plaintiffs overpaid for the assets which they bought, it does not allege actionable securities fraud. See Chemical Bank v. Arthur Andersen & Co., 726 F.2d 930, 943 (2d Cir.) (Friendly, J.) (reversing district court denial of motion to dismiss because fraud in procuring a commercial loan was not in connection with purchase or sale of securities where stock was only pledged as collateral for the loan), cert. denied, 469 U.S. 884 (1984).

In Chemical Bank, the Second Circuit held that misrepresentations or omissions involved in securities transactions, but not involving the securities themselves, cannot form a basis of a 10b-5 claim. Because there was "no misrepresentation as to the only 'security' involved in the transaction," the Court concluded there was no 10b-5 cause of action. Id. at 943 ("it is not sufficient to allege that a defendant has committed a proscribed act in a transaction of which the pledge of a security is a part."). Thus, the "in connection with requirement" requires that the alleged fraud concern the "fundamental nature of the [securities]: namely, characteristics and attributes that would induce [an] investor to buy or sell the particular [securities]." Mfrs. Hanover Trust Co. v. Smith Barney, Harris Upham & Co., 770 F. Supp. 176, 181 (S.D.N.Y. 1991) (citing Kearney v. Prudential-Bache Securities, Inc., 701 F. Supp. 416, 424 (S.D.N.Y. 1988)). The Court in Mfrs. Hanover v. Smith Barney, 770 F. Supp. at 180, captured the essence of the issue when it cited Santa Fe Industries, Inc. v. Green, 430 U.S. 462, 477, 478, 97 S. Ct. 1292 (1977), for "the principle that a court should be reluctant to imply a 10b-5 cause of action

for wrongs that do not fall within Section 10(b)'s fundamental purpose of requiring full and fair disclosure to participants in securities transactions of information that would be useful to them in deciding whether to buy or sell securities." A "de minimis" relationship between the fraudulent scheme and the purchase or sale of securities is insufficient. Id. at 181. See also Bochicchio v. Smith Barney, Harris Upham & Co., 647 F. Supp. 1426, 1429 (S.D.N.Y. 1986) ("Under the law of this Circuit, in order to be actionable under § 10(b) and Rule 10b-5, material misrepresentations or omissions must pertain to the securities themselves.").

Similarly, in Production Resource Group, L.L.C. v. Stonebridge Partners Equity Fund, L.P., 6 F. Supp. 2d 236 (S.D.N.Y. 1998), the Court dismissed a 10b-5 action because the "in connection with" requirement was not satisfied. This case involved the defendant's failure to sell stock (100% of a wholly-owned subsidiary) to the plaintiff after extended negotiations and a written agreement was prepared. After canvassing cases from within and without the District, the Court held that the "in connection with" requirement was not satisfied because the defendant's representation that it was negotiating exclusively with the plaintiff was not sufficiently related to the securities to set forth a 10b-5 claim:

> the alleged misrepresentations made by defendants were not "in connection with" the purchase or sale of securities, because they did not pertain to the value, nature or investment characteristics of the securities at issue. … The alleged misrepresentations relate only to whether defendants were negotiating solely with plaintiff and whether defendants intended to sell a business to plaintiff. Such misrepresentations did not pertain to the value of the stock of Four Star Holdings, and do not satisfy the "in connection with" requirement of the statute.

Id. at 240. Similarly, plaintiffs in the instant case have merely alleged misrepresentations related to the exclusivity of rights in certain assets being purchased by plaintiffs, and that has no cognizable connection with the value or investment characteristics of stock being used as partial consideration to acquire those assets. As the Court in Production Resource noted, this "is not the

sort of evil that the securities laws were designed to prevent." Id. at 241.[4]

If the alleged misrepresentations in Production Resource do not pass muster, then surely the fact that part of the consideration paid by plaintiffs on an asset purchase consisted of securities, without further allegations that defendants' misrepresentations affected or related to the value or characteristics of the securities, does not create a sufficient nexus between the misrepresentations and the securities. Restated, while the alleged misstatements and omissions may be related to the transaction as a whole, they do not affect the underlying characteristics of the only securities involved in the case, and hence were not made "in connection with" any sale of such securities. See Citibank, N.A. v. K-H Corp., 745 F. Supp. 899, 903 (S.D.N.Y. 1990) ("'To satisfy the 'in connection with' requirement, plaintiff may not allege fraudulent acts which merely happened to involve [securities] in some way'") (quoting Kearney, supra). For this reason, the Complaint does not set forth a 10b-5 cause of action.[5]

---

[4] The Court in Production Resource canvassed numerous cases that address the "in connection with" issue presented here, and some cases on their face contain language that might be interpreted to suggest that plaintiffs here have stated a valid 10b-5 claim. However, as is evident from a review of the context of those decisions, none is comparable to the situation here presented where (a) the contract indisputably involved the purchase and sale of assets that were not securities, and (b) the only connection to securities is that the buyer elected to pay for the assets with three forms of consideration, one of which was stock.

[5] Plaintiffs may well argue that defendants' interpretation of the "in connection with" requirement is too narrow and does not comport with the Supreme Court's analysis in Superintendent of Ins. of New York v. Bankers Life and Casualty Co., 404 U.S. 6, 92 S. Ct. 165 (1971). However, Superintendent of Ins. of New York was distinguished by the Second Circuit in Chemical Bank, and thus must be analyzed in light of the latter decision as well as other more recent decisions in this Circuit which have whittled down the broad Supreme Court interpretation. See Mfrs. Hanover Trust Co., supra, 770 F. Supp. at 181 ("Recent decisions of the Second Circuit interpreting the [Superintendent of Ins. of New York] holding have made it clear, however, that something more than a 'de minimis' relationship between the fraudulent scheme and the purchase or sale of securities is required"). Furthermore, in Superintendent of Ins. of New York, the defendant engaged in a complex scheme to defraud the plaintiffs, first by looting the plaintiff's assets, then by using those assets to purchase all of the plaintiff's stock. Thus, the purpose of the fraudulent scheme in that case was directly related to the sale of securities.

Plaintiffs also may rely on SEC v. Drysdale Securities, Inc., 785 F.2d 38, 42 (2d Cir. 1986), to argue that so long as the misrepresentations relate to part of the consideration received in exchange for securities, the "in connection with" requirement is satisfied. However, the Court in Drysdale Securities distinguished Chemical Bank on the grounds that the misrepresentations in that enforcement proceeding related to the financial health of a failed broker-dealer which directly affected the failed firm's ability to conduct securities transactions, resulting in losses to investors of about $300 million. The "misrepresentations directly involved the consideration for a securities transaction and are thus closely linked to transfer of securities, unlike the misrepresentation Chemical Bank." Id. at

Finally, should the Court find that the Complaint failed to plead a 10b-5 claim, the second count of the complaint, alleging controlling persons liability under Section 20(a) of the Exchange Act, should also be dismissed. See In re Alstom SA Sec. Litig., 2005 U.S. Dist. LEXIS 35641, at *128-29 (S.D.N.Y. Dec. 22, 2005) (no Section 20(a) claim if no predicate 10b-5 violation). Moreover, the Section 20(a) claim is also deficient as to defendant Griffin because it fails to allege other requisite elements of such a claim: it fails to allege that Griffin had *actual* control over either the primary violator (who plainly was not Griffin inasmuch as he was not alleged to have ever affirmatively represented or misrepresented anything to the plaintiffs[6] nor was he a signatory to the contract), or the transaction in question. Merely alleging that he was an officer of World Logistics is insufficient to make out a controlling person claim and is an insufficient basis to contend without more that he was a "culpable participant" in the alleged primary violation. Id. at *133-43.

B. The Complaint Fails to Allege Loss Causation.

Should the Court conclude that defendant Griffin somehow did make a misrepresentation or omission "in connection with" the purchase or sale of securities, the 10b-5 claim is still deficient because it fails to allege loss causation. Loss causation is a "causal connection between the material misrepresentation and the loss allegedly suffered by the plaintiff." Lattanzio v. Deloitte & Touche LLP, 476 F.3d 147, 157 (2d Cir. 2007) (citations omitted). To plead loss causation "'a plaintiff must allege … that the subject of the fraudulent statement or omission was the cause of the actual loss suffered,' i.e., that the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security." Lentell v.

---

41 (emphasis added). For the same reason, the holding and reasoning in Chemical Bank, not SEC v. Drysdale Securities, is applicable to the instant case where the alleged misrepresentation allegedly induced the Asset Purchase Agreement, not a securities transaction.

Merrill Lynch & Co., 396 F.3d 161, 173 (2d Cir.) (quoting Suez Equity Investors, L.P. v.
Toronto-Dominion Bank, 250 F.3d 87, 95 (2d Cir. 2001), cert. denied, 546 U.S. 935, 126 S. Ct.
421 (2005). Accordingly, the loss causation element requires "both that the loss be foreseeable
and that the loss be caused by the materialization of the concealed risk." Lentell, 396 F.3d at 173.
In other words, recovery is allowed only where the plaintiffs plead that there was a link between
the subject matter of the misrepresentation or omission and plaintiffs' alleged investment losses.

Plaintiffs fail to satisfy the loss causation requirement for the simple reason that the
transaction in question is not a securities transaction, and there is no connection whatsoever
alleged between the alleged misrepresentation and/or omission and the value of any securities. In
other words, plaintiffs seek damages based upon their purported overpayment for assets, but fail
to allege economic loss associated with Janel stock. Certainly, plaintiffs do not allege that the
exclusive rights to certain WLS assets (the subject matter at the core of this case) were so
intimately connected to the business value of Janel that it had an actual and quantifiable
relationship with the stock price. Further, the discovery of the "truth" regarding the eBridge
rights (i.e., the materialization of the concealed risk) is not alleged to have negatively impacted
Janel's stock price or its perceived market value.[7] As such, plaintiffs have failed to allege, let
alone demonstrate, the existence of loss causation as is required for any 10b-5 claim.

---

[6] Although the complaint in several instances indiscriminately states that "defendants" made certain
misrepresentations, it is never alleged that defendant Griffin actually did so, and in the context of a fraud charge
such vague allegations do not pass muster. See Section III, infra.

[7] In fact, the value of Janel's common stock began to increase after it entered into Asset Purchase Agreement, and
this increase accelerated after plaintiffs discovered the alleged problem with the exclusivity issue. See Hutner Aff. ¶
4 and Ex. C thereto. It would thus seem that the Asset Purchase Agreement and the property rights provided for
therein (exclusive or otherwise) either had no affect on the value of Janel stock or enhanced it.

## II.  THE COMPLAINT DOES NOT PLEAD COMMON LAW FRAUD AGAINST DEFENDANT GRIFFIN.

The Complaint does not allege that Griffin affirmatively misrepresented anything; the entirety of the fraud charge against him is that he failed to disclose to the plaintiffs a material fact pertaining to the Cunningham Settlement. Because the fraud claim is based on an alleged omission, it should be dismissed for two distinct reasons: (1) it fails to allege that Griffin had a duty to disclose omitted information, and (2) plaintiffs' reliance on that omission was not reasonable as a matter of law.

Generally, to set forth a claim for common law fraud under New York law, a plaintiff must allege that "(i) the defendant made a material false representation, (ii) the defendant intended to defraud the plaintiff thereby, (iii) the plaintiff reasonably relied on the representation, and (iv) plaintiff suffered damage as a result of such reliance." E.g., Nasik Breeding & Research Farm Ltd. v. Merck & Co., Inc., 165 F. Supp. 2d 514, 528 (S.D.N.Y. 2001). A fraud claim can be based on an omission, but "there must be a showing that a duty of disclosure existed." See Aaron Ferer & Sons, Ltd. v. Chase Manhattan Bank N.A., 731 F.2d 112, 123 (2d Cir. 1984) (citations omitted). In Aaron Ferer & Sons, Ltd., the Second Circuit addressed facts similar to those presented here, namely, an alleged omission made in the context of business negotiations: "During the course of negotiations surrounding a business transaction, a duty to disclose may arise in two situations: first, where the parties enjoy a fiduciary relationship…; and second, where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge." Id. at 123. Moreover, a duty to speak does not rise simply because two parties are on opposite sides of a bargaining table because caveat emptor is still alive under New York law. Frontier-Kemper Constructors, Inc. v. Am. Rock Salt Co., 224 F. Supp. 2d 520, 530 (W.D.N.Y. 2002).

A.  <u>Plaintiffs Have Not Pled Facts Giving Rise To A Duty To Disclose.</u>

The Complaint does not allege that the parties had a fiduciary relationship. Therefore, "a duty to disclose can be said to arise only it was alleged that (i) the defendant possessed superior knowledge, (ii) which was not readily available to the plaintiff, and (iii) defendant knows the plaintiff is acting under a mistaken belief with respect to a material fact. <u>See</u> <u>Grumman Allied Indus., Inc. v. Rohr Indus., Inc.</u>, 748 F.2d 729, 738-39 (2d Cir. 1984).

In <u>Grumman</u>, the plaintiff purchased all of the assets of the defendant's subsidiary, and brought a claim of fraud against the defendant based on the failure to disclose facts relating to one of the assets acquired in the transaction. In holding that the defendant did not have a duty to disclose, the Second Circuit determined that the defendant's knowledge was not superior because the plaintiff had "unrestricted access to [the defendant's] facilities, personnel and records, as well as [plaintiffs'] arsenal of legal and technical talent." <u>Id.</u> at 739.

Here, as in <u>Grumman</u>, plaintiffs were given access to WLS's business records, and more importantly had direct access to and communication with Cunningham's attorney. See Complaint ¶¶ 14, 20, 23, 24 (plaintiff received correspondence directly from Cunningham's counsel and was copied on emails between various defendants and Cunningham's counsel). Plaintiffs addressed and pursued one issue between WLS and Cunningham (the lien), and were aware that there were other disputes between those two parties. Plaintiffs thus had knowledge of the dispute, knowledge that it was being resolved, and direct access to all parties and their counsel. However, rather than request further information (beyond the release of the lien), and rather than asking to see the agreement resolving the dispute between Cunningham and World Logistics (which resulted in the release of the lien), and rather than utilize the opportunity to investigate these matters further, plaintiffs instead hastily closed on the Asset Purchase Agreement a mere eight days later. Complaint ¶¶ 25, 26. Plaintiffs have thus failed to establish that defendants had a duty

to disclose further information about the Cunningham Settlement since the information in question was readily available to plaintiffs and they had means and opportunity to access and obtain that information.

### B. Griffin's Alleged Omission Also Cannot Form a Basis For a Fraud Claim Because Plaintiffs Could Not Have Reasonably Relied Thereon.

Griffin's alleged nondisclosure is not actionable as a matter of law because plaintiffs have not alleged justifiable reliance on the alleged omission and cannot do so as a matter of law. Even assuming the truth of plaintiffs' allegations, it is apparent from the face of the Complaint that plaintiffs' alleged reliance was not "justified." See Granite Partners, L.P. v. Bear, Stearns & Co., 17 F. Supp. 2d 275, 288 (S.D.N.Y. 1998).

In Granite Partners, the Court stated that:

> Under New York law, a party entering into a transaction has a duty to conduct an independent appraisal of the risk it is assuming and a duty to investigate the nature of its business transactions. In evaluating whether a plaintiff has adequately alleged justifiable reliance, a court may consider, inter alia, the plaintiff's sophistication and expertise in finance, the existence of a fiduciary relationship, and whether the plaintiff initiated the transaction.

Id. at 289-90 (granting 12(b)(6) motion to dismiss common law fraud claim) (citations omitted and emphasis added). See Grumman Allied Indus., Inc. v. Rohr Indus., Inc., supra, 748 F.2d at 737 ("Where sophisticated businessmen engaged in major transactions enjoy access to critical information but fail to take advantage of that access, New York courts are particularly disinclined to entertain claims of justifiable reliance.").

It is evident that plaintiffs failed to comply with their duty to investigate the nature of this business transaction, as they were aware of issues between WLS and Cunningham, were informed that the problems were resolved, but apparently did not ask to see the available materials (e.g., the Cunningham Settlement) prior to signing the Asset Purchase Agreement. See Complaint ¶¶ 22-24. It cannot be disputed that the parties in this action are sophisticated, were

intimately familiar with the business in general, and were at all times represented by counsel. They should have known that one does not 'get something for nothing' in business and that releasing a lien requires consideration -- consideration that would likely affect the very assets plaintiffs were about to purchase. Thus, plaintiffs were aware of a quickly evolving situation that directly affected the subject matter of the Asset Purchase Agreement, yet failed to exercise a reasonable level of due diligence to investigate the relevant facts.

In sum, plaintiff either sat on its rights or chose to look the other way, and this is all evident from the Complaint. Where a party has been put on notice of the existence of material facts, such facts are accessible, no effort is made to examine such facts, yet the party nevertheless proceeds with a transaction, it has willingly assumed the business risk that the facts may not be as represented. In this instance, a party will not be heard to complain that he has been defrauded when it is his own evident lack of due care which is responsible for his predicament.[8]

Having failed to establish that defendant Griffin had any duty to disclose, and it being further evident that plaintiffs did not as a matter of law reasonably rely on the alleged omission, plaintiffs have failed to plead a claim for common law fraud against Brian Griffin.

III. THE 10b-5 AND COMMON LAW FRAUD CLAIMS FAIL TO SATISFY THE REQUIREMENTS OF PSLRA AND/OR FAIL TO ALLEGE FRAUD WITH THE REQUISITE PARTICULARITY UNDER FED. R. CIV. P. 9(b).

Any case that alleges a securities fraud under Rule 10b-5 must comply with the heightened pleading requirements set forth in Fed. R. Civ. P. 9(b) with respect to certain elements of the claim, and with the requirements of Private Securities Litigation Reform Act (PSLRA), 15 U.S.C. § 78u-4(b)(1), (b)(2), with respect to others. See In re Initial Public Offering Sec. Litig., 241 F. Supp. 2d 281, 329-336 (S.D.N.Y. 2003). Analysis of the Complaint indicates

---

[8] This analysis of course does not in any way affect plaintiffs' putative claim for breach of contract.

that the requirements of both the rule and the statute have not been met.

"To plead a material misrepresentation or omission under the heightened pleading requirements of the PSLRA, a complaint must 'specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information or belief, the complaint shall state with particularity all facts on which that belief is formed.'" <u>Catton, et al. v. Defense Technology Systems, Inc., et al.</u>, 2006 U.S. Dist. LEXIS 205 at *16 (S.D.N.Y. Jan. 3, 2006) (quoting 15 U.S.C. § 78u-4(b)(1)). Rule 9(b) further provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." In <u>380544 Canada, Inc. V. Aspen Technology, Inc.</u>, 2008 U.S. Dist. LEXIS 20968 at *44 (S.D.N.Y. March 18, 2008), the Court reaffirmed that Rule 9(b) requires that a complaint "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." The Complaint fails to satisfy this heightened burden for pleading fraud.

With respect to defendant Griffin, the Complaint alleges specifically that he was involved in only one alleged misrepresentation or omission, namely, that he (along with the other defendants, all of whom were specifically identified by name) failed to provide plaintiffs with information about the terms of the Cunningham Settlement. Complaint ¶ 25. If that is the entire basis for the two fraud claims against Griffin, we would submit the adequacy of those claims should be evaluated only per Sections I and II of this Argument. However, to the extent plaintiffs contend Griffin is liable or responsible for any other alleged misrepresentation or omission, the fraud claims are also inadequately pled.

The Complaint makes a number of allegations that fail to identify which defendant was the speaker. See, e.g., Complaint ¶¶ 2 ("Defendants made false and misleading statements …"), 22 ("Defendants replied to the Janel email message within minutes, and advised its officers that the dispute with Cunningham would be promptly resolved").[9] Such pleading tactics are impermissible since "a claim may not rely on blanket references to acts or omissions by all defendants, for each defendant named is entitled to be appraised of the circumstances surrounding the fraudulent conduct for which he is individually charged." Granite Partners L.P., supra, 17 F. Supp. 2d at 286. And in In re Crude Oil Commodity Litig., 2007 U.S. Dist. LEXIS 47902 at *19 (S.D.N.Y. June 28, 2007), the Court dismissed a complaint which "lumped" defendants together and failed to specifically allege the fraud perpetrated by each defendant.

A complaint that simply clumps defendants together and fails to inform each defendant of the nature of his alleged participation in the fraud is unacceptably vague. Dresner v. Utility.com, Inc., 371 F. Supp. 2d 476, 493-94 (S.D.N.Y. 2005); Nasik Breeding & Research Farm Ltd. v. Merck & Co., supra, 165 F. Supp. 2d at 529. This is especially problematic where, as here, no facts are alleged concerning the extent to which Griffin was involved, if at all, in the transaction at issue. There are no allegations that he was involved in negotiating the Asset Purchase Agreement or the Cunningham Settlement, that he was the point man for anything (e.g., communicating with plaintiffs), or that he was anything other than a titular officer of a company that was under the control of another person who was involved in an effort to sell certain of its assets. Surely, more than the conclusory allegations that Griffin misled the plaintiffs at various

---

[9] There are a number of other instances where the Complaint in conclusory fashion attempts to place knowledge in Mr. Griffin's mind (Complaint ¶ 27), or intent to deceive in his heart (Complaint ¶ 30), without setting forth the basis for such conclusions, which is troublesome especially since the nature of his actual involvement or role in the transaction (other than as a recipient of emails) was not alleged.

(unidentified) points during the course of negotiating the Asset Purchase Agreement is required

to enable the plaintiffs to proceed with their fraud claims.

## IV.  PLAINTIFFS' REMAINING STATE LAW CLAIMS SHOULD ALL BE DISMISSED BECAUSE THEY FAIL TO ALLEGE THE NECESSARY ELEMENTS OF EACH CLAIM.

Plaintiffs have asserted three other state law claims, for conversion, unjust enrichment,

and breach of the covenant of good faith and fair dealing. However, the allegations set forth in

the Complaint for each of these claims are deficient.

### A.  Plaintiffs Have Not Alleged Wrongful Exercise of Dominion Required to Establish a Claim for Conversion.

Because the Complaint is silent regarding defendant Griffin taking possession or being in

possession of plaintiffs' property, the claim for conversion fails due to the absence of factual

allegations to support the required element of "wrongful exercise of dominion." See, e.g., State

v. Seventh Regiment Fund, Inc., 98 N.Y.2d 249, 260, 746 N.Y.S.2d 637, 645 (2002).[10] Indeed,

"[c]onversion 'is concerned with possession, not with title'" and only becomes complete "after 'a

wrongful taking and carrying away of the property' by a third-party." Id. at 259-60, 746

N.Y.S.2d at 645 (citation omitted). Further, "'to sustain a conversion claim, a plaintiff must

allege acts that are unlawful or wrongful as distinguished from acts that are a mere violation of

contractual rights.'" Dover Ltd. v. A.B. Watley, Inc., 423 F. Supp. 2d 303, 328 (S.D.N.Y. 2006)

(citations omitted).

Under these standards, it is apparent that the Complaint fails to set forth a claim for

conversion against Griffin for two reasons. First, the Complaint is devoid of any factual

---

[10] Paragraph 39 states in conclusory terms that "Class B Shares of Janel and monies which belonged to Plaintiffs" were delivered to "Defendants." However, there are no factual allegations of anything being delivered to Griffin, and, as noted above, Janel has continuously retained possession of all stock owed to Griffin pursuant to the Asset Purchase Agreement and has never paid him any of the money he is entitled to receive under that agreement. As such, he has never been in possession of or exercised dominion over Janel's property -- rightfully or wrongfully. These facts constitute the grounds (in part) for future claims to be brought by Mr. Griffin against plaintiffs.

allegations that the Janel stock or funds referred to in the Asset Purchase Agreement were ever delivered or paid to Griffin. Second, even if Griffin were alleged to have obtained and/or received Janel's stock and/or funds, it surely has not been alleged that he took it wrongfully, as opposed to receiving it in the face of a breach of contract by World Logistics. For these reasons, the cause of action for conversion against Griffin should be dismissed.

B.  The Unjust Enrichment Claim Should be Dismissed Because It Is Precluded by the Asset Purchase Agreement, Which Governs the Subject Matter of This Dispute.

Plaintiffs' fifth cause of action purports to assert a claim of unjust enrichment against defendants arising out of an alleged breach of the Asset Purchase Agreement. It is well-settled, however, that "'[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery [for unjust enrichment] for events arising out of the same subject matter.'" American Medical Ass'n v. United Healthcare Corp., 2007 U.S. Dist. LEXIS 18729 at *33 (S.D.N.Y. 2007) (bracketed words in original) (citations omitted); Warner Theatre Assocs. Ltd. Partnership v. Metropolitan Life Insurance Co., 1997 U.S. Dist. LEXIS 17217 (S.D.N.Y. Nov. 14, 1997). For some reason that defendant cannot discern, the obvious claim -- for breach of contract against the seller -- has not been asserted. Nonetheless, it is undisputed that the Asset Purchase Agreement, signed by plaintiffs, speaks to the exclusivity of the rights which plaintiffs claim was improperly compromised by defendants. See Complaint ¶¶ 19, 26-27. Since there is an express written agreement governing the subject matter of the Complaint, the rights and liabilities of the parties can only be determined solely on a theory of breach of contract, which precludes a cause of action for unjust enrichment.

C.  The Claim for Breach of Covenant of Good Faith and Fair Dealing, As Against Griffin, Should be Dismissed Because He Was Not a Party to the Asset Purchase Agreement.

The claim for breach of covenant of good faith and fair dealing is inapplicable to defendant Griffin because he was not party to the Asset Purchase Agreement, and a plaintiff may

assert such a claim only against a party to the contract. <u>See, e.g.</u>, <u>The Dweck Law Firm, L.L.P. v. Mann</u>, 340 F. Supp. 2d 353, 358 (S.D.N.Y. 2004) (quoting <u>Aventine Inv. Mgmt., Inc. v. Canadian Imperial Bank of Commerce</u>, 265 A.D.2d 513, 514, 697 N.Y.S.2d 128, 130 (2d Dep't 1999). <u>See</u> <u>Warner Theatre Associates Ltd. Partnership v. Metropolitan Life Insurance Co.</u>, 1997 U.S. Dist. LEXIS 17217 (S.D.N.Y. Nov. 14, 1997) ("The duty of good faith arises only to control how the parties carry out the rights and duties they have undertaken under the contract; it does not give rise to independent obligations by itself."); <u>Silver v. NL Industries, Inc.</u>, 1984 U.S. Dist. LEXIS 17287 at *11 (S.D.N.Y. April 25, 1984). Moreover, "[t]o state a cause of action for breach of the implied covenant of good faith and fair dealing, 'the plaintiff must allege facts which tend to show that the defendant sought to prevent performance of the contract or to withhold its benefits from the plaintiff.'" <u>Dweck</u>, 340 F. Supp. 2d at 358 (again quoting <u>Aventine</u>). As the Complaint is devoid of allegations that satisfy these requirements, for this reason as well the breach of covenant claim against Mr. Griffin should be dismissed.

<u>CONCLUSION</u>

For the foregoing reasons, defendant Brian P. Griffin respectfully requests that this Court dismiss the Complaint in its entirety as against him.

Dated: New York, New York
      May 23, 2008

                             HUTNER KLARISH LLP
                             Attorneys for Defendant Brian P. Griffin
                             1359 Broadway, Suite 2001
                             New York, New York 10018
                             212-391-9235

                             By: <u>s/Eric S. Hutner</u>
                                Eric S. Hutner (EH 6836)

-19-