IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JANEL WORLD TRADE, LTD.                  )        08-CV-1327 (RJS)
and **ORDER LOGISTICS, INC.**,           )
                                         )
             Plaintiffs,                 )
     vs.                                 )
                                         )
WORLD LOGISTICS SERVICES, INC.,          )
RICHARD FRANCIS, and BRIAN GRIFFIN,      )
                                         )
             Defendants.                 )

---

## MEMORANDUM OF LAW SUBMITTED BY DEFENDANT RICHARD FRANCIS IN SUPPORT OF HIS MOTION TO DISMISS THE COMPLAINT PURSUANT TO F.R.C.P. 12(b)(6) and 9(b)

**LEVI & KORSINSKY, LLP**

Attorneys for defendant Richard Francis

39 Broadway, Suite 1601
New York, NY 10006
Phone: (212) 363-7500


**PRIBANIC & PRIBANIC, LLP**

Attorneys for defendant Richard Francis

513 Court Place
Pittsburgh, PA 15219
Phone: (412) 281-8844

## Table of Contents

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF THE ALLEGATIONS . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT:   FEDERAL CAUSES OF ACTION . . . . . . . . . . . . . . . . . . . . 3

    1.    This Court Must Dismiss Plaintiffs' Federal Causes of Action because the Complaint is Devoid of Allegations That Relate to "Loss Causation" and "Transaction Causation" as the Supreme Court Defines Those Elements in Dura Pharmaceuticals . . . . . . . . . . . . 4

        A.    Loss Causation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        B.    Transaction Causation . . . . . . . . . . . . . . . . . . . . . . . . 7

        C.    Economic Loss . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    2.    This Court Must Dismiss Plaintiffs' Federal Causes of Action because the Complaint is Devoid of Allegations Relating to Any Motive or Recklessness on the Part of Defendant Francis As the Second Circuit Articulated Those Requirements in Kalnit v. Eichlet . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    3.    The Allegations of Plaintiffs' Complaint Are Insufficient to Create an Inference That the Transaction between Janel and the Defendants Occurred "in Connection with the Purchase or Sale of a Security" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

ARGUMENT:   STATE LAW CAUSES OF ACTION . . . . . . . . . . . . . . . . . . . . 11

    1.    This Court Must Dismiss Plaintiffs' Cause of Action in Conversion because Defendant Francis Did Not Exercise the Requisite "Dominion and Control" over Plaintiffs' Property . . . . . . . . . . . . 11

    2.    The Plaintiffs May Not Pursue a Cause of Action in Unjust Enrichment because the Transaction on Which They Base Such Claim Results from a Valid and Enforceable Written Contract . . . . . . . . 11

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## TABLE OF AUTHORITIES

**Cases:**

<u>Abrash v. Fox</u>,
  805 F.Supp. 206 (S.D.N.Y. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

<u>Bazak Int'l Corp. v. Tarrant Apparel Group</u>,
  347 F.Supp.2d 1 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

<u>Chemical Bank v. Arthur Andersen & Co.</u>,
  726 F.2d 930 (2d Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

<u>Dura Pharmaceuticals, Inc. v. Broudo</u>,
  544 U.S. 336, 125 S.Ct. 1627 (2005) . . . . . . . . . . . . . . . . . . . . . 3, 4, 5, 7, 8, 9

<u>Kalnit v. Eichler</u>,
  264 F.3d 131 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

<u>Lentell v. Merrill Lynch & Co., Inc.</u>,
  396 F.3d 161 (2d Cir. 2005);
  *cert. denied*, 546 U.S. 935, 126 S.Ct. 421 (2005) . . . . . . . . . . . . . . . . . . . . . 6, 7

<u>Levitin v. Painewebber, Inc.</u>,
  933 F.Supp. 325 (S.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

<u>Leykin v. AT&T Corp.</u>,
  423 F.Supp.2d 229 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . 4, 6, 7, 10

<u>MacDraw, Inc. v. CIT Group Equip. Fin., Inc.</u>,
  157 F.3d 956 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

<u>Pross v. Katz</u>,
  784 F.2d 455 (2d Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

<u>Shields v. Citytrust Bancorp, Inc.</u>,
  25 F.3d 1124 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

<u>State of New York v. Seventh Regiment Fund, Inc.</u>,
  98 N.Y.2d 249, 746 N.Y.S.2d 637 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . 11

<u>Suez Equity Investors, L.P. v. Toronto-Dominion Bank</u>,
  250 F.3d 87 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

i

TABLE OF AUTHORITIES (cont.)

**Statutes and Rules:**

15 U.S.C. § 78j(b); § 10(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 9, 10

15 U.S.C. § 78u-4(b)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

F.R.C.P. 9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

17 C.F.R. § 240.10b-5; Rule 10b-5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 9, 10

## MEMORANDUM OF LAW SUBMITTED BY DEFENDANT
## RICHARD FRANCIS IN SUPPORT OF HIS MOTION TO DISMISS
## THE COMPLAINT PURSUANT TO F.R.C.P. 12(b)(6) and 9(b)

Defendant Richard Francis, by his attorneys, submits this Memorandum of Law in support of his Motion to Dismiss plaintiffs' complaint pursuant to **F.R.C.P. 12(b)(6)** for failure to state a claim, and pursuant to **F.R.C.P. 9(b)** for failure to plead federal fraud claims with the requisite particularity.

### Preliminary Statement

Plaintiffs advance causes of action under federal securities law and state common law relating to a transaction by which plaintiff Janel obtain certain assets of Order Logistics in exchange for consideration consisting of cash and a quantity of Janel preferred shares. The plaintiffs, however, have failed to plead with the requisite specificity the elements of loss causation, transactional causation, and scienter to support their federal claims, and have also failed to allege a cause of action "in connection with the purchase or sale of a security." The state law causes of action are also either inadequately plead, or attempt to advance causes of action of which the law affords no relief under the facts advanced.

### Summary of the Allegations

The claims advanced in plaintiffs' complaint arise from the acquisition of Order Logistics, Inc. by plaintiff Janel World Trade, Ltd. (Janel) pursuant to an Asset Purchase Agreement, the effective date of which was **October 18, 2007.**[1] *See* **Complaint at ¶¶ 9, 25.** Order Logistics is now a wholly-owned subsidiary of Janel. *Id.* at ¶ 4. The plaintiffs allege that

---

[1] Although the plaintiffs base their causes of action on the Asset Purchase Agreement and refer to such "Purchase Agreement" at various instances in their complaint, they have not attached a copy of the Purchase Agreement to their complaint. Accordingly, defendant Francis has attached a copy of the Purchase Agreement to his Motion to Dismiss (Tab 1). *See* Affidavit of Richard Francis (Tab 2).

they were to have received "exclusive rights" to all assets that were conveyed to the plaintiffs pursuant to the Purchase Agreement. *See, Id.* at ¶¶ 12, 19. The consideration that Janel paid for such assets consisted of cash to defendant Brian Griffin, cash payments to creditors of the corporate defendant to retire outstanding debts, and issuance of certain Janel preferred stock to personal defendants Richard Francis and Brian Griffin. *Id.* at ¶ 2.

Sometime prior to Janel's acquisition of Order Logistics, defendant World Logistical Services, Inc. (which at that time was known as Order Logistics, Inc.) had acquired a subsidiary named eBridge Technologies, Inc. pursuant to two agreements with a man named Braddock Cunningham. **Complaint at ¶ 16.**[2] Plaintiffs allege that during the time Janel was entertaining negotiations with defendants Francis and Griffin for the acquisition of Order Logistics, a due diligence review of the business and financial records of defendant World Logistics revealed that Mr. Cunningham had filed liens against World Logistics as a result of an alleged breach of the Cunningham Agreements. Janel's due diligence review also revealed several other liens against World Logistic assets from "suppliers, banks, financing companies, and the Internal Revenue Service." *Id.* at 14, 17-18.

It is obvious that the issue of the Cunningham liens had still not been resolved as late as **October 5, 2007** because it was on that date that Janel alleges to have received a demand from Braddock Cunningham's lawyer "that no transaction [for the acquisition of Order Logistics] be consummated without Cunningham's consent." **Complaint at 20.** This apparently concerned Janel, who "immediately advised" the defendants of the letter. The defendants then replied that they would resolve the dispute with Cunningham, which they believed would result in the satisfaction of the liens. Janel then alleges that on **October 10, 2007** it received a copy of an e-

---

[2]The plaintiffs refer to such agreements as the "Cunningham Agreements."

mail that defendant Francis directed to World Logistics and other interested parties that an agreement with Cunningham had been achieved.  *Id.* at 21-23.[3]

The plaintiffs allege that Braddock Cunningham obtained in the settlement a non-exclusive right to use certain intellectual property over which Janel was to obtain an exclusive right eight days later pursuant to the Asset Purchase Agreement.  **Complaint at ¶ 26.**  Thus the terms of the Cunningham Settlement provide the sole basis for the plaintiffs' several causes of action. Although the plaintiffs allege that none of the defendants provided information to Janel regarding the terms and provisions of the Cunningham Settlement, *Id.* at ¶ 25, *the plaintiffs do not allege that Janel ever made the slightest inquiry with any of the defendants* regarding the terms of the Cunningham Settlement notwithstanding Janel's knowledge that a settlement was in the offing.

### Argument:  Federal Causes of Action

The Supreme Court of the United States recently provided a succinct reiteration of the *prima facie* elements necessary to sustain a private cause of action under § 10(b) of the Securities Exchange Act[4] and **Rule 10b-5** promulgated thereunder.[5]  <u>Dura Pharmaceuticals, Inc. v. Broudo</u>, 544 U.S. 336, 125 S.Ct. 1627 (2005):  These elements are:

  (1)     A material misrepresentation (or omission);

  (2)     Scienter; *i.e.* - a wrongful state of mind;

  (3)     A connection with the purchase or sale of a security;

  (4)     Reliance, often referred to . . . as "transactional causation";

  (5)     Economic loss; and

  (6)     "Loss causation"; *i.e.* - a causal connection between the material misrepresentation and the loss.

---

[3]The plaintiffs refer to such agreement as the "Cunningham Settlement."

[4]**15 U.S.C. § 78j(b).**

[5]**17 C.F.R. § 240.10b-5.**

3

Dura, 544 U.S. at 341-342; 125 S.Ct at 1631. This Court must dismiss plaintiffs' complaint because it fails to allege several of these necessary elements as federal law has defined them.

    1.    **This Court Must Dismiss Plaintiffs' Federal Causes of Action because the Complaint is Devoid of Allegations That Relate to "Loss Causation" and "Transaction Causation" as the Supreme Court Defines Those Elements in Dura Pharmaceuticals.**

This Court reiterated barely two years ago that "[a]ll private plaintiffs asserting securities fraud claims under Section 10(b) or Rule 10b-5 'must prove that the defendant's fraud caused an economic loss.'" Leykin v. AT&T Corp., 423 F.Supp.2d 229, 238 (S.D.N.Y. 2006), quoting Dura, 544 U.S. 336, 338, 125 S.Ct. 1627, 1629 (2005). This common law requirement, known as "loss causation," Dura, 544 U.S. at 338, 125 S.Ct. at 1629, is now codified at **15 U.S.C. § 78u-4(b)(4)**. Leykin, 423 F.Supp.2d at 238. The Supreme Court admonishes in Dura, however, that the need to *prove* proximate causation and economic loss also requires that a plaintiff adequately *allege* these requirements as well. Dura, 544 U.S. at 346, 125 S.Ct. at 1634 (emphasis in original).

The Leykin court elucidates that the causation element of **Rule 10b-5** contains two distinct elements: "transaction causation" *and* "loss causation":

> [A] plaintiff must allege both transaction causation, *i.e.*, that *but for* the fraudulent statement or omission, the plaintiff would not have entered into the transaction; and loss causation, *i.e.*, that the subject of the fraudulent statement or omission was the cause of the actual loss suffered.

Leykin, 423 F.Supp.2d at 238, *quoting* Suez Equity Investors, L.P. v. Toronto-Dominion Bank, 250 F.3d 87, 95 (2d Cir. 2001). This Court must dismiss plaintiffs' complaint because the complaint contains neither of these necessary elements.

### A.    Loss Causation

The sole basis for plaintiffs' claims is that Janel was unaware at the time it consummated the Purchase Agreement that Mr. Cunningham held a *non*-exclusive right to particular intellectual property assets over which Janel had contemplated having an exclusive right. The only paragraphs in the complaint that reference any economic loss at all as a result of the subject omission are ¶ 2, ¶ 33, and ¶ 34. The allegations that appear in these paragraphs are insufficient under <u>Dura</u> and its progeny in this Court to sustain plaintiffs' federal causes of action.

For example, ¶ 2 alleges generally that the defendants "made false and misleading statements and omitted material information" to obtain the cash, satisfaction of indebtedness, and stock that constituted the consideration for Janel's purchase of Order Logistics' assets. Plaintiffs then allege that the "current value" of the stock component of the purchase price is "approximately $3,700,000" and conclude that:

> Plaintiffs have been damaged in an amount to be determined at trial, which they believe to be not less than $2,925,000.

Complaint at ¶ 2. There is no attempt in this paragraph to inform the defendants whether such loss is attributable to any adverse fluctuation in the market price of Janel stock following disclosure of the alleged "omissions," or whether any such loss has been occasioned by another causal modality.

No less vague on the issue of causation is ¶ 33, wherein plaintiffs allege that the defendants indulged in such misrepresentations and omissions "with the specific intent that plaintiffs reasonably rely on them" and were "directly injured as a result." Plaintiffs then allege in the following paragraph that:

> By reason of the foregoing, Plaintiffs have sustained damages in an
> amount to be determined at trial, but in excess of $1,000,000.

**Complaint at ¶ 34.** Again, there is no attempt to correlate any misrepresentation or omission

with a description of a particular adverse economic consequence other than the ultimate value

of such loss - whatever the actual source of such loss might be, which necessarily remains the

subject of speculation.

Such speculation cannot withstand examination under applicable case law. Although the

several misrepresentations and omissions at issue in Leykin were decidedly more complex than

the omission at issue *sub judice*, the subject matter of the omission in Leykin also involved the

alleged misappropriation of proprietary technology. This Court elucidated in Leykin that to

establish "loss causation" it was necessary that:

> '[A] plaintiff must allege . . . that the *subject* of the fraudulent statement or omission was
> the cause of the actual loss suffered (citation to Suez Equity omitted); *i.e.*, that the
> misstatement or omission conceal something from the market that, when disclosed,
> *negatively affected the value of the security.* Otherwise the loss was not foreseeable.

Leykin, 423 F.Supp.2d at 239, *quoting* Lentell v. Merrill Lynch & Co., Inc., 396 F.3d 161,

173 (2d Cir. 2005), *cert. denied,* 546 U.S. 935, 126 S.Ct. 421 (2005) (first emphasis in

original; second emphasis supplied).

The Leykin court then articulated a two part analysis to examine whether the complaint

before it contained sufficient allegations of "loss causation." The first of these was to identify

"the subject of the misrepresentations or omission that allegedly caused the loss," which the

court described as "the risk concealed by defendant's fraud." Leykin, 423 F.Supp.2d at 240.

The second step was "to determine whether the complaint alleges that the concealed risk led to

plaintiff's loss." *Id.* The court elucidated that:

6

'If that relationship is sufficiently direct, loss causation is established, but if the connection is attenuated, or if the plaintiff *fails to demonstrate a causal connection between the content of the alleged misstatements or omissions and the harm actually suffered,* a fraud claim will not lie.'

Leykin, 423 F.Supp.2d at 240, *quoting* Lentell, 396 F.3d at 174 (emphasis supplied).  The Leykin court ultimately held that plaintiff's allegation that the price of the stock at issue had been *artificially inflated* (because the defendants had not disclosed their earlier misappropriation of the proprietary technology) was *not* sufficient to allege the requisite loss causation in the absence of additional allegations that the market had learned of the defendant's intentions during the relevant period, or that the defendant had actually used the proprietary technology to compete with the plaintiff. Leykin, 423 F.Supp.2d at 243.  In terms of the court's two part test, there were simply no allegations that the "risk" that was occasioned by the allegedly fraudulent misappropriation ever materialized as an actual economic loss. *See Id.* at 243-246.

The allegations of the complaint at issue before this Court are not simply "insufficient" in terms of Dura, Lentell, and Leykin; the allegations of loss causation simply do not exist in the first instance.  As Justice Breyer opines in Dura, "it should not prove burdensome for a plaintiff who has suffered an economic loss to provide a defendant with some indication of the loss and the causal connection that the plaintiff has in mind. Dura, 544 U.S. at 347, 125 S.Ct. at 1634.  Accordingly, this Court must dismiss plaintiffs' federal causes of action for plaintiffs' failure to allege the requisite loss causation.

**B.     Transaction Causation**

The requisite element of "transaction causation" relates to reliance on a particular misstatement or omission. *See* Dura 544 U.S. at 341, 125 S.Ct. at 1631 (equating "reliance" with "transaction causation").  The bald allegation in ¶ 33 of the compliant wherein plaintiffs

7

allege no more than they "did, in fact, reasonably rely upon the [defendants'] statements" is insufficient.  In this context it was necessary for the plaintiffs to allege not merely that they "relied" on defendants' misrepresentations or omissions, but that Janel would *not* have consummated the acquisition of World Logistics if the provision of the "Cunningham Settlement" whereby Cunningham retained certain non-exclusive rights to World Logistic intellectual property had been made known to Janel.

Absent such allegation, a plaintiff would be able to sustain a cause of action for securities fraud even where the misrepresentation, if known, would not have altered a plaintiff's decision to proceed with a particular transaction.  Such potential would run afoul of the Supreme Court's admonishment in Dura that private securities actions are available "not to provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentations actually cause.  Dura, 544 U.S. at 345, 125 S.Ct. at 239.  Accordingly, this Court must dismiss plaintiffs' federal causes of action for plaintiffs' failure to allege the requisite transaction causation.

C.    Economic Loss

The requisite allegation relating to actual "economic loss" is also absent from plaintiffs' complaint.  The plaintiffs fail to allege that Janel actually issued and transferred the Class B convertible preferred stock to any of the defendants in accordance with the stock transfer schedule provision of the underlying "Purchase Agreement" between Janel and the defendants. Where, as here, the federal claims are necessarily predicated on Janel's Class B convertible preferred stock - the only "securities" at issue in this matter - the plaintiffs suffer no economic

8

loss within **Rule 10b-5** unless such shares were actually issued and transferred.[6]

Moreover, under the terms of the underlying "Purchase Agreement" between Janel and the defendants **(Tab 1, at ¶ 3.1(b))**, defendant Francis is unable to convert any of the Class B convertible preferred stock until "two years after issuance." Thus Janel will be unable to demonstrate any economic loss occasioned by the alleged "misrepresentation or omission" because any decline in market value that may have occurred as a result of the alleged non-disclosure of a particular provision of the "Cunningham Settlement" shall have priced itself into the market long before defendant Francis is able to convert his Class B shares into common stock. *Cf.* Dura, 544 U.S. at 342-343, 125 S.Ct. 1631-1632 (discussing the logical link between inflated purchase prices and later economic loss). Accordingly, this Court must dismiss plaintiffs' federal causes of action for plaintiffs' failure to allege the requisite economic loss.

    **2.**    **This Court Must Dismiss Plaintiffs' Federal Causes of Action because the Complaint is Devoid of Allegations Relating to Any Motive or Recklessness on the Part of Defendant Francis As the Second Circuit Articulated Those Requirements in Kalnit v. Eichlet.**

A plaintiff who brings a private cause of action under § **10(b)** and **Rule 10b-5** must of course allege the requisite element of scienter; that is, such plaintiff must allege a specific "intent to deceive, manipulate, or defraud." Kalnit v. Eichlet, 264 F.3d 131, 138 (2d Cir. 2001). In light of the heightened pleading requirements of **F.R.C.P. 9(b),** however, this Circuit requires a plaintiff in this context to allege either (1) facts to show that defendants had both motive and opportunity to commit fraud, or **(2)** facts that constitute strong circumstantial

---

[6]Apart from the absence of any such allegation in plaintiffs's complaint, defendant Francis has submitted his own affidavit in support of his motion to dismiss wherein he declares that he never received any of the Series B Convertible Preferred Stock that is referenced in § **3.1(b)** and **Schedule 3** of the "Purchase Agreement" with Janel.

evidence of conscious misbehavior or recklessness." Kalnit, 264 F.3d at 138-139.

Nowhere in plaintiffs' complaint, however, do the plaintiffs attempt to ascribe a particular motive to defendant Francis that "entail[s] concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged." Kalnit, 264 F.3d at 139, quoting Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1130 (2d Cir. 1994). In the absence of specific allegations of motive and opportunity as those terms have been defined within this Circuit, plaintiffs' complaint is insufficient to allege the requisite scienter, and must be dismissed.

3.  **The Allegations of Plaintiffs' Complaint Are Insufficient to Create an Inference That the Transaction between Janel and the Defendants Occurred "in Connection with the Purchase or Sale of a Security."**

To state a claim under § 10(b) and **Rule 10b-5** the plaintiffs must allege that the defendants' omission occurred "in connection with the purchase or sale of a security." *See, e.g.*, Levitin v. Painewebber, Inc., 933 F.Supp. 325, 328 (S.D.N.Y. 1996). The underlying transaction at issue *sub judice*, however, was nothing more than the sale of a business (Order Logistics), in which a component of the sales price included shares of stock in Janel, the corporation that was purchasing the business, and cash.[7] When examined in this light, the defendants' acceptance of shares of preferred stock in Janel in satisfaction of some of the purchase price for the assets of Order Logistics renders the actual shares of stock merely incidental or tangentially related to the conduct of which the plaintiffs complain. Such tangential relationship will not meet the "in connection with" requirement. Leykin, 423 F.Supp.2d at 241. To the contrary, the fraud itself "must be 'integral to the purchase and sale of the securities in

---

[7]More accurately, the transaction did not involve the sale of Order Logistics to Janel *per se*, but the sale to Janel of all but a few excluded assets of Order Logistics.

question.'" *Id.*, *quoting* Pross v. Katz, 784 F.2d 455, 459 (2d Cir. 1986).

The plaintiffs cannot allege that the omission at issue related to the value of the Janel preferred stock, a dispositive requisite that is missing from the complaint. At worst the misrepresentation relates to the value of assets that Janel purchased as part of the sale of Order Logistics. Where the nature of the misrepresentation cannot be sensibly construed as relating to the nature of a security, or to the character or attributes of a security, then a private cause of action under federal securities law must fail. Abrash v. Fox, 805 F.Supp. 206 (S.D.N.Y. 1992). *See also*, Chemical Bank v. Arthur Andersen & Co., 726 F.2d 930 (2d Cir. 1984).

### Argument:
### State Law Causes of Action

**1.    This Court Must Dismiss Plaintiffs' Cause of Action in Conversion because Defendant Francis Did Not Exercise the Requisite "Dominion and Control" over Plaintiffs' Property.**

The plaintiffs allege that the defendants "wrongfully exercised dominion and control" and "otherwise unlawfully converted" Janel's Class B preferred stock. **Complaint at ¶ 39.** Conversion is the "unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." State of New York v. Seventh Regiment Fund, Inc., 98 N.Y.2d 249, 259, 746 N.Y.S.2d 637, 645 (2002). The plaintiffs do not allege that Janel tendered or transferred the Class B preferred stock to defendant Francis. Thus Mr. Francis could not assume or exercise any right of ownership over such stock in the absence of any such transfer.

Moreover, the plaintiffs' claim for conversion cannot withstand a motion to dismiss in this instance because the property that forms the basis of plaintiffs' conversion claim - the preferred stock - was supposed to have been *voluntarily transferred* pursuant to the Purchase

Agreement. A voluntary transfer of property pursuant to a written contract of which plaintiff Janel was a party cannot as a matter of law rise to the requisite "affirmative act" that gives rise to a cause of action in conversion under New York law.

### 2. The Plaintiffs May Not Pursue a Cause of Action in Unjust Enrichment because the Transaction on Which They Base Such Claim Results from a Valid and Enforceable Written Contract.

The very allegations that plaintiffs advance in their complaint defeat the cause of action they advance for unjust enrichment. Plaintiffs expressly acknowledge that the transaction at issue occurred pursuant to a written Purchase Agreement. The cases are legion that "the existence of a valid and enforceable contract . . . ordinarily precludes recovery in *quasi* contract [such as unjust enrichment] for events arising out of the same subject matter." Bazak Int'l Corp. v. Tarrant Apparel Group, 347 F.Supp.2d 1, 4 (S.D.N.Y. 2004), *quoting* MacDraw, Inc. v. CIT Group Equip. Fin., Inc., 157 F.3d 956, 964 (2d Cir. 1998). Accordingly, the plaintiffs' claim for unjust enrichment fails as a matter of law because there is no reasonable interpretation of plaintiffs' complaint that suggests anything other than the existence of a valid and enforceable contract by which most assets of Order Logistics were transferred to Janel for the specific consideration articulated therein.

### Conclusion

For the reasons advanced herein, defendant Richard Francis respectfully prays that this Honorable Court dismiss plaintiffs' complaint in its entirety as against him.

12

DATED:  **May 23, 2008**

Respectfully submitted,

_____

**LEVI & KORSINSKY, LLP**

Eduard Korsinsky (EK 8989)
Joseph E. Levi (JL 0848)
Juan E. Monteverde (JM 8169)

39 Broadway, Suite 1601
New York, NY 10006
Phone:  (212) 363-7500
Fax:    (212) 363-7171

**PRIBANIC & PRIBANIC, LLP**

Vincent Coppola

513 Court Place
Pittsburgh, PA 15219
Phone:  (412) 281-8844
Fax:    (212) 281-4740

13

## CERTIFICATE OF SERVICE

Juan E. Monteverde, under penalties of perjury, affirms as follows:

1.      I am an associate at Levi & Korsinsky, LLP and I am over 18 years of age and am not a party to the above referenced matter.

2.      On May 23, 2008 I served the foregoing **Motion to Dismiss, Memorandum in Support, and Declaration of Vincent Coppola** in support thereof upon the following counsel:

WILLIAM J. DAVIS
Scheichet & Davis, PC
767 Third Avenue, 24th Floor
New York, NY 10017
**Attorneys for Plaintiffs**

ERIC S. HUTNER
Hutner Klarish LLP
1359 Broadway, Suite 2001
New York, NY 10018
**Attorneys for Defendant Brian P. Griffin**

the address designated by said attorneys for that purpose, by depositing a true and correct copy thereof in a first class pre-paid envelope properly addressed as indicated above.

Dated:      May 23, 2008

_____
Juan E. Monteverde

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANEL WORLD TRADE, LTD.<br>and ORDER LOGISTICS, INC.,<br><br>Plaintiffs,<br><br>vs.<br><br>WORLD LOGISTICS SERVICES, INC.,<br>RICHARD FRANCIS, and BRIAN GRIFFIN,<br><br>Defendants. | 08-CV-1327 (RJS) |

## MEMORANDUM OF LAW SUBMITTED BY DEFENDANT
## RICHARD FRANCIS IN SUPPORT OF HIS MOTION TO DISMISS
## THE COMPLAINT PURSUANT TO F.R.C.P. 12(b)(6) and 9(b)

LEVI & KORSINSKY, LLP

Attorneys for defendant Richard Francis

39 Broadway, Suite 1601
New York, NY 10006
Phone: (212) 363-7500


PRIBANIC & PRIBANIC, LLP

Attorneys for defendant Richard Francis

513 Court Place
Pittsburgh, PA 15219
Phone: (412) 281-8844

## Table of Contents

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF THE ALLEGATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT:   FEDERAL CAUSES OF ACTION . . . . . . . . . . . . . . . . . . . . . . . . 3

1.   This Court Must Dismiss Plaintiffs' Federal Causes of Action
     because the Complaint is Devoid of Allegations That Relate to
     "Loss Causation" and "Transaction Causation" as the Supreme
     Court Defines Those Elements in Dura Pharmaceuticals . . . . . . . . . . . . 4

     A.   Loss Causation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

     B.   Transaction Causation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

     C.   Economic Loss . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

2.   This Court Must Dismiss Plaintiffs' Federal Causes of Action
     because the Complaint is Devoid of Allegations Relating to Any
     Motive or Recklessness on the Part of Defendant Francis As the
     Second Circuit Articulated Those Requirements in Kalnit v.
     Eichler . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

3.   The Allegations of Plaintiffs' Complaint Are Insufficient to Create
     an Inference That the Transaction between Janel and the
     Defendants Occurred "in Connection with the Purchase or Sale of
     a Security" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

ARGUMENT:   STATE LAW CAUSES OF ACTION . . . . . . . . . . . . . . . . . . . . . . 11

1.   This Court Must Dismiss Plaintiffs' Cause of Action in Conversion
     because Defendant Francis Did Not Exercise the Requisite
     "Dominion and Control" over Plaintiffs' Property . . . . . . . . . . . . . . . 11

2.   The Plaintiffs May Not Pursue a Cause of Action in Unjust
     Enrichment because the Transaction on Which They Base Such
     Claim Results from a Valid and Enforceable Written Contract . . . . . . . . 11

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## TABLE OF AUTHORITIES

Cases:

Abrash v. Fox,
805 F.Supp. 206 (S.D.N.Y. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Bazak Int'l Corp. v. Tarrant Apparel Group,
347 F.Supp.2d 1 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Chemical Bank v. Arthur Andersen & Co.,
726 F.2d 930 (2d Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Dura Pharmaceuticals, Inc. v. Broudo,
544 U.S. 336, 125 S.Ct. 1627 (2005) . . . . . . . . . . . . . . . . . . . 3, 4, 5, 7, 8, 9

Kalnit v. Eichler,
264 F.3d 131 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

Lentell v. Merrill Lynch & Co., Inc.,
396 F.3d 161 (2d Cir. 2005);
cert. denied, 546 U.S. 935, 126 S.Ct. 421 (2005) . . . . . . . . . . . . . . . . . . 6, 7

Levitin v. Painewebber, Inc.,
933 F.Supp. 325 (S.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Leykin v. AT&T Corp.,
423 F.Supp.2d 229 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . 4, 6, 7, 10

MacDraw, Inc. v. CIT Group Equip. Fin., Inc.,
157 F.3d 956 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Pross v. Katz,
784 F.2d 455 (2d Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Shields v. Citytrust Bancorp, Inc.,
25 F.3d 1124 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

State of New York v. Seventh Regiment Fund, Inc.,
98 N.Y.2d 249, 746 N.Y.S.2d 637 (2002) . . . . . . . . . . . . . . . . . . . . . . . . 11

Suez Equity Investors, L.P. v. Toronto-Dominion Bank,
250 F.3d 87 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## TABLE OF AUTHORITIES (cont.)

**Statutes and Rules:**

15 U.S.C. § 78j(b); § 10(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3, 9, 10

15 U.S.C. § 78u-4(b)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

F.R.C.P. 9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

17 C.F.R. § 240.10b-5; Rule 10b-5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 9, 10

## MEMORANDUM OF LAW SUBMITTED BY DEFENDANT RICHARD FRANCIS IN SUPPORT OF HIS MOTION TO DISMISS THE COMPLAINT PURSUANT TO F.R.C.P. 12(b)(6) and 9(b)

Defendant Richard Francis, by his attorneys, submits this Memorandum of Law in support of his Motion to Dismiss plaintiffs' complaint pursuant to **F.R.C.P. 12(b)(6)** for failure to state a claim, and pursuant to **F.R.C.P. 9(b)** for failure to plead federal fraud claims with the requisite particularity.

### Preliminary Statement

Plaintiffs advance causes of action under federal securities law and state common law relating to a transaction by which plaintiff Janel obtain certain assets of Order Logistics in exchange for consideration consisting of cash and a quantity of Janel preferred shares. The plaintiffs, however, have failed to plead with the requisite specificity the elements of loss causation, transactional causation, and scienter to support their federal claims, and have also failed to allege a cause of action "in connection with the purchase or sale of a security." The state law causes of action are also either inadequately plead, or attempt to advance causes of action of which the law affords no relief under the facts advanced.

### Summary of the Allegations

The claims advanced in plaintiffs' complaint arise from the acquisition of Order Logistics, Inc. by plaintiff Janel World Trade, Ltd. (Janel) pursuant to an Asset Purchase Agreement, the effective date of which was October 18, 2007.[1]  *See* Complaint at ¶¶ 9, 25. Order Logistics is now a wholly-owned subsidiary of Janel.  *Id.* at ¶ 4. The plaintiffs allege that

---

[1]Although the plaintiffs base their causes of action on the Asset Purchase Agreement and refer to such "Purchase Agreement" at various instances in their complaint, they have not attached a copy of the Purchase Agreement to their complaint. Accordingly, defendant Francis has attached a copy of the Purchase Agreement to his Motion to Dismiss (Tab 1).  *See* Affidavit of Richard Francis (Tab 2).

they were to have received "exclusive rights" to all assets that were conveyed to the plaintiffs pursuant to the Purchase Agreement. *See, Id.* at ¶¶ 12, 19. The consideration that Janel paid for such assets consisted of cash to defendant Brian Griffin, cash payments to creditors of the corporate defendant to retire outstanding debts, and issuance of certain Janel preferred stock to personal defendants Richard Francis and Brian Griffin. *Id.* at ¶ 2.

Sometime prior to Janel's acquisition of Order Logistics, defendant World Logistical Services, Inc. (which at that time was known as Order Logistics, Inc.) had acquired a subsidiary named eBridge Technologies, Inc. pursuant to two agreements with a man named Braddock Cunningham. Complaint at ¶ 16.² Plaintiffs allege that during the time Janel was entertaining negotiations with defendants Francis and Griffin for the acquisition of Order Logistics, a due diligence review of the business and financial records of defendant World Logistics revealed that Mr. Cunningham had filed liens against World Logistics as a result of an alleged breach of the Cunningham Agreements. Janel's due diligence review also revealed several other liens against World Logistic assets from "suppliers, banks, financing companies, and the Internal Revenue Service." *Id.* at 14, 17-18.

It is obvious that the issue of the Cunningham liens had still not been resolved as late as October 5, 2007 because it was on that date that Janel alleges to have received a demand from Braddock Cunningham's lawyer "that no transaction [for the acquisition of Order Logistics] be consummated without Cunningham's consent." Complaint at 20. This apparently concerned Janel, who "immediately advised" the defendants of the letter. The defendants then replied that they would resolve the dispute with Cunningham, which they believed would result in the satisfaction of the liens. Janel then alleges that on October 10, 2007 it received a copy of an e-

---

²The plaintiffs refer to such agreements as the "Cunningham Agreements."

2

mail that defendant Francis directed to World Logistics and other interested parties that an agreement with Cunningham had been achieved. *Id.* at 21-23.[3]

The plaintiffs allege that Braddock Cunningham obtained in the settlement a non-exclusive right to use certain intellectual property over which Janel was to obtain an exclusive right eight days later pursuant to the Asset Purchase Agreement. Complaint at ¶ 26. Thus the terms of the Cunningham Settlement provide the sole basis for the plaintiffs' several causes of action. Although the plaintiffs allege that none of the defendants provided information to Janel regarding the terms and provisions of the Cunningham Settlement, *Id.* at ¶ 25, *the plaintiffs do not allege that Janel ever made the slightest inquiry with any of the defendants* regarding the terms of the Cunningham Settlement notwithstanding Janel's knowledge that a settlement was in the offing.

### Argument: Federal Causes of Action

The Supreme Court of the United States recently provided a succinct reiteration of the *prima facie* elements necessary to sustain a private cause of action under § 10(b) of the Securities Exchange Act[4] and **Rule 10b-5** promulgated thereunder.[5] Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 125 S.Ct. 1627 (2005): These elements are:

(1)    A material misrepresentation (or omission);

(2)    Scienter; *i.e.* - a wrongful state of mind;

(3)    A connection with the purchase or sale of a security;

(4)    Reliance, often referred to . . . as "transactional causation";

(5)    Economic loss; and

(6)    "Loss causation"; *i.e.* - a causal connection between the material misrepresentation and the loss.

---

[3]The plaintiffs refer to such agreement as the "Cunningham Settlement."

[4]15 U.S.C. § 78j(b).

[5]17 C.F.R. § 240.10b-5.

3

Dura, 544 U.S. at 341-342; 125 S.Ct at 1631. This Court must dismiss plaintiffs' complaint because it fails to allege several of these necessary elements as federal law has defined them.

**1. This Court Must Dismiss Plaintiffs' Federal Causes of Action because the Complaint is Devoid of Allegations That Relate to "Loss Causation" and "Transaction Causation" as the Supreme Court Defines Those Elements in Dura Pharmaceuticals.**

This Court reiterated barely two years ago that "[a]ll private plaintiffs asserting securities fraud claims under Section 10(b) or Rule 10b-5 'must prove that the defendant's fraud caused an economic loss.'" Leykin v. AT&T Corp., 423 F.Supp.2d 229, 238 (S.D.N.Y. 2006), *quoting* Dura, 544 U.S. 336, 338, 125 S.Ct. 1627, 1629 (2005). This common law requirement, known as "loss causation," Dura, 544 U.S. at 338, 125 S.Ct. at 1629, is now codified at 15 U.S.C. § 78u-4(b)(4). Leykin, 423 F.Supp.2d at 238. The Supreme Court admonishes in Dura, however, that the need to *prove* proximate causation and economic loss also requires that a plaintiff adequately *allege* these requirements as well. Dura, 544 U.S. at 346, 125 S.Ct. at 1634 (emphasis in original).

The Leykin court elucidates that the causation element of **Rule 10b-5** contains two distinct elements: "transaction causation" *and* "loss causation":

> [A] plaintiff must allege both transaction causation, *i.e.*, that *but for* the fraudulent statement or omission, the plaintiff would not have entered into the transaction; and loss causation, *i.e.*, that the subject of the fraudulent statement or omission was the cause of the actual loss suffered.

Leykin, 423 F.Supp.2d at 238, *quoting* Suez Equity Investors, L.P. v. Toronto-Dominion Bank, 250 F.3d 87, 95 (2d Cir. 2001). This Court must dismiss plaintiffs' complaint because the complaint contains neither of these necessary elements.

4

## A.   Loss Causation

The sole basis for plaintiffs' claims is that Janel was unaware at the time it consummated the Purchase Agreement that Mr. Cunningham held a *non*-exclusive right to particular intellectual property assets over which Janel had contemplated having an exclusive right. The only paragraphs in the complaint that reference any economic loss at all as a result of the subject omission are ¶ 2, ¶ 33, and ¶ 34. The allegations that appear in these paragraphs are insufficient under Dura and its progeny in this Court to sustain plaintiffs' federal causes of action.

For example, ¶ 2 alleges generally that the defendants "made false and misleading statements and omitted material information" to obtain the cash, satisfaction of indebtedness, and stock that constituted the consideration for Janel's purchase of Order Logistics' assets. Plaintiffs then allege that the "current value" of the stock component of the purchase price is "approximately $3,700,000" and conclude that:

> Plaintiffs have been damaged in an amount to be determined at trial,
> which they believe to be not less than $2,925,000.

Complaint at ¶ 2. There is no attempt in this paragraph to inform the defendants whether such loss is attributable to any adverse fluctuation in the market price of Janel stock following disclosure of the alleged "omissions," or whether any such loss has been occasioned by another causal modality.

No less vague on the issue of causation is ¶ 33, wherein plaintiffs allege that the defendants indulged in such misrepresentations and omissions "with the specific intent that plaintiffs reasonably rely on them" and were "directly injured as a result." Plaintiffs then allege in the following paragraph that:

5

By reason of the foregoing, Plaintiffs have sustained damages in an amount to be determined at trial, but in excess of $1,000,000.

Complaint at ¶ 34. Again, there is no attempt to correlate any misrepresentation or omission with a description of a particular adverse economic consequence other than the ultimate value of such loss - whatever the actual source of such loss might be, which necessarily remains the subject of speculation.

Such speculation cannot withstand examination under applicable case law. Although the several misrepresentations and omissions at issue in Leykin were decidedly more complex than the omission at issue *sub judice*, the subject matter of the omission in Leykin also involved the alleged misappropriation of proprietary technology. This Court elucidated in Leykin that to establish "loss causation" it was necessary that:

'[A] plaintiff must allege . . . that the *subject* of the fraudulent statement or omission was the cause of the actual loss suffered (citation to Suez Equity omitted); *i.e.*, that the misstatement or omission conceal something from the market that, when disclosed, *negatively affected the value of the security.* Otherwise the loss was not foreseeable.

Leykin, 423 F.Supp.2d at 239, *quoting* Lentell v. Merrill Lynch & Co., Inc., 396 F.3d 161, 173 (2d Cir. 2005), *cert. denied*, 546 U.S. 935, 126 S.Ct. 421 (2005) (first emphasis in original; second emphasis supplied).

The Leykin court then articulated a two part analysis to examine whether the complaint before it contained sufficient allegations of "loss causation." The first of these was to identify "the subject of the misrepresentations or omission that allegedly caused the loss," which the court described as "the risk concealed by defendant's fraud." Leykin, 423 F.Supp.2d at 240. The second step was "to determine whether the complaint alleges that the concealed risk led to plaintiff's loss." *Id.* The court elucidated that:

6

'If that relationship is sufficiently direct, loss causation is established, but if the connection is attenuated, or if the plaintiff *fails to demonstrate a causal connection between the content of the alleged misstatements or omissions and the harm actually suffered,* a fraud claim will not lie.'

Leykin, 423 F.Supp.2d at 240, *quoting* Lentell, 396 F.3d at 174 (emphasis supplied). The Leykin court ultimately held that plaintiff's allegation that the price of the stock at issue had been *artificially inflated* (because the defendants had not disclosed their earlier misappropriation of the proprietary technology) was *not* sufficient to allege the requisite loss causation in the absence of additional allegations that the market had learned of the defendant's intentions during the relevant period, or that the defendant had actually used the proprietary technology to compete with the plaintiff. Leykin, 423 F.Supp.2d at 243. In terms of the court's two part test, there were simply no allegations that the "risk" that was occasioned by the allegedly fraudulent misappropriation ever materialized as an actual economic loss. *See Id.* at 243-246.

The allegations of the complaint at issue before this Court are not simply "insufficient" in terms of Dura, Lentell, and Leykin; the allegations of loss causation simply do not exist in the first instance. As Justice Breyer opines in Dura, "it should not prove burdensome for a plaintiff who has suffered an economic loss to provide a defendant with some indication of the loss and the causal connection that the plaintiff has in mind. Dura, 544 U.S. at 347, 125 S.Ct. at 1634. Accordingly, this Court must dismiss plaintiffs' federal causes of action for plaintiffs' failure to allege the requisite loss causation.

## B.   Transaction Causation

The requisite element of "transaction causation" relates to reliance on a particular misstatement or omission. *See* Dura 544 U.S. at 341, 125 S.Ct. at 1631 (equating "reliance" with "transaction causation"). The bald allegation in ¶ 33 of the compliant wherein plaintiffs

7

allege no more than they "did, in fact, reasonably rely upon the [defendants'] statements" is insufficient. In this context it was necessary for the plaintiffs to allege not merely that they "relied" on defendants' misrepresentations or omissions, but that Janel would *not* have consummated the acquisition of World Logistics if the provision of the "Cunningham Settlement" whereby Cunningham retained certain non-exclusive rights to World Logistic intellectual property had been made known to Janel.

Absent such allegation, a plaintiff would be able to sustain a cause of action for securities fraud even where the misrepresentation, if known, would not have altered a plaintiff's decision to proceed with a particular transaction. Such potential would run afoul of the Supreme Court's admonishment in Dura that private securities actions are available "not to provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentations actually cause. Dura, 544 U.S. at 345, 125 S.Ct. at 239. Accordingly, this Court must dismiss plaintiffs' federal causes of action for plaintiffs' failure to allege the requisite transaction causation.

### C. Economic Loss

The requisite allegation relating to actual "economic loss" is also absent from plaintiffs' complaint. The plaintiffs fail to allege that Janel actually issued and transferred the Class B convertible preferred stock to any of the defendants in accordance with the stock transfer schedule provision of the underlying "Purchase Agreement" between Janel and the defendants. Where, as here, the federal claims are necessarily predicated on Janel's Class B convertible preferred stock – the only "securities" at issue in this matter – the plaintiffs suffer no economic

loss within Rule 10b-5 unless such shares were actually issued and transferred.[6]

Moreover, under the terms of the underlying "Purchase Agreement" between Janel and the defendants (Tab 1, at ¶ 3.1(b)), defendant Francis is unable to convert any of the Class B convertible preferred stock until "two years after issuance." Thus Janel will be unable to demonstrate any economic loss occasioned by the alleged "misrepresentation or omission" because any decline in market value that may have occurred as a result of the alleged non-disclosure of a particular provision of the "Cunningham Settlement" shall have priced itself into the market long before defendant Francis is able to convert his Class B shares into common stock. *Cf.* Dura, 544 U.S. at 342-343, 125 S.Ct. 1631-1632 (discussing the logical link between inflated purchase prices and later economic loss). Accordingly, this Court must dismiss plaintiffs' federal causes of action for plaintiffs' failure to allege the requisite economic loss.

**2.  This Court Must Dismiss Plaintiffs' Federal Causes of Action because the Complaint is Devoid of Allegations Relating to Any Motive or Recklessness on the Part of Defendant Francis As the Second Circuit Articulated Those Requirements in Kalnit v. Eichlet.**

A plaintiff who brings a private cause of action under § 10(b) and Rule 10b-5 must of course allege the requisite element of scienter; that is, such plaintiff must allege a specific "intent to deceive, manipulate, or defraud." Kalnit v. Eichlet, 264 F.3d 131, 138 (2d Cir. 2001). In light of the heightened pleading requirements of F.R.C.P. 9(b), however, this Circuit requires a plaintiff in this context to allege either (1) facts to show that defendants had both motive and opportunity to commit fraud, or (2) facts that constitute strong circumstantial

_____

[6]Apart from the absence of any such allegation in plaintiffs's complaint, defendant Francis has submitted his own affidavit in support of his motion to dismiss wherein he declares that he never received any of the Series B Convertible Preferred Stock that is referenced in § 3.1(b) and Schedule 3 of the "Purchase Agreement" with Janel.

9

evidence of conscious misbehavior or recklessness." Kalnit, 264 F.3d at 138-139.

Nowhere in plaintiffs' complaint, however, do the plaintiffs attempt to ascribe a particular motive to defendant Francis that "entail[s] concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged." Kalnit, 264 F.3d at 139, quoting Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1130 (2d Cir. 1994). In the absence of specific allegations of motive and opportunity as those terms have been defined within this Circuit, plaintiffs' complaint is insufficient to allege the requisite scienter, and must be dismissed.

**3.      The Allegations of Plaintiffs' Complaint Are Insufficient to Create an Inference That the Transaction between Janel and the Defendants Occurred "in Connection with the Purchase or Sale of a Security."**

To state a claim under § 10(b) and Rule 10b-5 the plaintiffs must allege that the defendants' omission occurred "in connection with the purchase or sale of a security." See, e.g., Levitin v. Painewebber, Inc., 933 F.Supp. 325, 328 (S.D.N.Y. 1996). The underlying transaction at issue *sub judice*, however, was nothing more than the sale of a business (Order Logistics), in which a component of the sales price included shares of stock in Janel, the corporation that was purchasing the business, and cash.[7] When examined in this light, the defendants' acceptance of shares of preferred stock in Janel in satisfaction of some of the purchase price for the assets of Order Logistics renders the actual shares of stock merely incidental or tangentially related to the conduct of which the plaintiffs complain. Such tangential relationship will not meet the "in connection with" requirement. Leykin, 423 F.Supp.2d at 241. To the contrary, the fraud itself "must be 'integral to the purchase and sale of the securities in

---

[7]More accurately, the transaction did not involve the sale of Order Logistics to Janel *per se*, but the sale to Janel of all but a few excluded assets of Order Logistics.

10

question.'" *Id.*, quoting <u>Pross v. Katz</u>, 784 F.2d 455, 459 (2d Cir. 1986).

The plaintiffs cannot allege that the omission at issue related to the value of the Janel preferred stock, a dispositive requisite that is missing from the complaint. At worst the misrepresentation relates to the value of assets that Janel purchased as part of the sale of Order Logistics. Where the nature of the misrepresentation cannot be sensibly construed as relating to the nature of a security, or to the character or attributes of a security, then a private cause of action under federal securities law must fail. <u>Abrash v. Fox</u>, 805 F.Supp. 206 (S.D.N.Y. 1992). *See also,* <u>Chemical Bank v. Arthur Andersen & Co.</u>, 726 F.2d 930 (2d Cir. 1984).

## Argument:
## State Law Causes of Action

**1.  This Court Must Dismiss Plaintiffs' Cause of Action in Conversion because Defendant Francis Did Not Exercise the Requisite "Dominion and Control" over Plaintiffs' Property.**

The plaintiffs allege that the defendants "wrongfully exercised dominion and control" and "otherwise unlawfully converted" Janel's Class B preferred stock.  Complaint at ¶ 39. Conversion is the "unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." <u>State of New York v. Seventh Regiment Fund, Inc.</u>, 98 N.Y.2d 249, 259, 746 N.Y.S.2d 637, 645 (2002). The plaintiffs do not allege that Janel tendered or transferred the Class B preferred stock to defendant Francis. Thus Mr. Francis could not assume or exercise any right of ownership over such stock in the absence of any such transfer.

Moreover, the plaintiffs' claim for conversion cannot withstand a motion to dismiss in this instance because the property that forms the basis of plaintiffs' conversion claim - the preferred stock - was supposed to have been *voluntarily transferred* pursuant to the Purchase

11

Agreement. A voluntary transfer of property pursuant to a written contract of which plaintiff Janel was a party cannot as a matter of law rise to the requisite "affirmative act" that gives rise to a cause of action in conversion under New York law.

**2. The Plaintiffs May Not Pursue a Cause of Action in Unjust Enrichment because the Transaction on Which They Base Such Claim Results from a Valid and Enforceable Written Contract.**

The very allegations that plaintiffs advance in their complaint defeat the cause of action they advance for unjust enrichment. Plaintiffs expressly acknowledge that the transaction at issue occurred pursuant to a written Purchase Agreement. The cases are legion that "the existence of a valid and enforceable contract . . . ordinarily precludes recovery in *quasi* contract [such as unjust enrichment] for events arising out of the same subject matter." Bazak Int'l Corp. v. Tarrant Apparel Group, 347 F.Supp.2d 1, 4 (S.D.N.Y. 2004), *quoting* MacDraw, Inc. v. CIT Group Equip. Fin., Inc., 157 F.3d 956, 964 (2d Cir. 1998). Accordingly, the plaintiffs' claim for unjust enrichment fails as a matter of law because there is no reasonable interpretation of plaintiffs' complaint that suggests anything other than the existence of a valid and enforceable contract by which most assets of Order Logistics were transferred to Janel for the specific consideration articulated therein.

## Conclusion

For the reasons advanced herein, defendant Richard Francis respectfully prays that this Honorable Court dismiss plaintiffs' complaint in its entirety as against him.

12

DATED: May 23, 2008

Respectfully submitted,

LÉVI & KORSINSKY, LLP

Eduard Korsinsky (EK 8989)
Joseph E. Levi (JL 0848)
Juan E. Monteverde (JM 8169)

39 Broadway, Suite 1601
New York, NY 10006
Phone: (212) 363-7500
Fax:     (212) 363-7171

PRIBANIC & PRIBANIC, LLP

Vincent Coppola

513 Court Place
Pittsburgh, PA 15219
Phone: (412) 281-8844
Fax:     (212) 281-4740

13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

JANEL WORLD RADE, LTD. And
ORDER LOGISTICS, INC.,                                    08-CV-01327(RJS)

        Plaintiffs,

                                  ORDER DISMISSING THE
                                  COMPLAINT PURSUANT
    -against-                        TO FED. R. CIV. P. 12(b)(6)
                                  and 9(b)

WORLD LOGISTICS SERVICES, INC.,
RICHARD S. FRANCIS, and
BRIAN P. GRIFFIN,                                        ECF Case

        Defendants.

------------------------------------------------------------X

      **THIS MATTER** having been opened to the Court by Pribanic & Pribanic, LLC

(Vincent A. Coppola, appearing), attorneys for defendant Richard Francis, for an Order

dismissing the within action pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b), upon notice to

Scheichet & Davis, P.C., attorneys for plaintiffs (William J. Davis, appearing), and Levi

& Korsinsky, LLP, attorneys for defendant Richard S. Francis (Juan E. Monteverde,

appearing), and the Court having considered the submissions of counsel in support of and

in opposition to the application, and having heard oral argument on _____,

2008, and for good cause shown; now therefore

      **IT IS** on this _____ day of _____, 2008

      **ORDERED** that the Motion to Dismiss the within action pursuant to Fed. R. Civ.

P. 12(b)(6) and 9(b) is **GRANTED.**