UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
JANEL WORLD TRADE, LTD., and
ORDER LOGISTICS, INC.,                              08-CV-01327 (RJS)

       Plaintiffs,

  -against-

WORLD LOGISTICS SERVICES, INC.,
RICHARD S. FRANCIS, and
BRIAN P. GRIFFIN,                                   ECF Case

       Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


REPLY MEMORANDUM OF LAW SUBMITTED BY DEFENDANT
BRIAN P. GRIFFIN IN FURTHER SUPPORT OF HIS MOTION
<u>TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6) AND 9(B)</u>



                      HUTNER KLARISH LLP
                      Attorneys for Defendant Brian P. Griffin
                      1359 Broadway, Suite 2001
                      New York, New York 10018
                      212-391-9235

TABLE OF CONTENTS

Page

ARGUMENT ............................................................................................................................1

   I.  PLAINTIFFS FAIL TO ESTABLISH THAT THE "IN CONNECTION WITH" AND LOSS CAUSATION REQUIREMENTS HAVE BEEN ALLEGED. ..................................................................1

   II.  PLAINTIFFS FAIL TO DEMONSTRATE THAT THE COMPLAINT ALLEGED COMMON LAW FRAUD. .......................................3

   III. PLAINTIFFS' REMAINING ARGUMENTS DO NOT OVERCOME THE PROBLEMS WITH THE COMPLAINT. ..........................................5

      A.  Pleading Deficiencies ...............................................................................5

      B.  Conversion. ...............................................................................................6

      C.  Unjust Enrichment. ...................................................................................6

      D.  Breach of Covenant of Good Faith and Fair Dealing. .............................7

   IV. THE COMPLAINT AND THE RESPONSE TO DEFENDANT'S MOTION IMPLICATES THE NEED FOR SANCTIONS UNDER RULE 11. ......................................................................................................7

CONCLUSION .........................................................................................................................8

REPLY MEMORANDUM OF LAW SUBMITTED BY
DEFENDANT BRIAN P. GRIFFIN IN FURTHER SUPPORT OF HIS
MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6) AND 9(B)

Defendant Brian P. Griffin, by his attorneys Hutner Klarish LLP, submits this reply memorandum of law in further support of his motion to dismiss.

ARGUMENT

I. PLAINTIFFS FAIL TO ESTABLISH THAT THE "IN CONNECTION WITH" AND LOSS CAUSATION REQUIREMENTS HAVE BEEN ALLEGED.

This entire case revolves around the purchase and sale of business assets in which securities were part of the consideration paid. Plaintiffs claim that as a result of defendants' misrepresenta-tions and omissions, they overpaid for the assets that they bought. In defendant Griffin's initial memorandum of law ("Defendant's Mem."), it was demonstrated that plaintiffs failed to allege that the so-called fraud was "in connection with" the sale of securities because the alleged misrepresentations and omissions do not pertain to any securities or to the fundamental value of the securities used to pay part of the purchase price of the assets. Plaintiffs also failed to properly allege loss causation.

Plaintiffs' memorandum in opposition to Griffin's motion ("Plaintiffs' Mem.") does virtually nothing to overcome the infirmities identified in Defendant's Mem. Plaintiffs distort and misstate well-settled law regarding the "in connection with" requirement by arguing that the fraud does not have to concern the fundamental value of the securities. In doing so, they rely (Plaintiffs' Mem. at 7-9) on outdated cases that were previously distinguished (see Defendant's Mem. at 8, n. 5). Heavily relying on SEC v. Drysdale Securities Corp., 785 F.2d 38 (2d Cir. 1986), plaintiffs conclude that because securities were transferred as a result of a misrepresentation, there was a securities transaction. However, the securities transactions in Drysdale Securities (involving repos) were substantially connected to the challenged conduct --

the defendant's representation of solvency. That misrepresentation, when materialized, rendered the value of the repos worthless. Id. at 42. In the instant case, any alleged misrepresentation or omission may have influenced Janel's decision to purchase the assets, but they did not render Janel's securities worthless or affect their value. Extending the holding of Drysdale Securities to this situation would suggest that any statement even remotely connected to any security involved in any kind of business transaction would bring a claim within the embrace of 10b-5 -- whether it is related to the value of the securities in issue or not. Such a sweep is not at all consistent with the letter, spirit or case law interpretation of the scope of a Section 10(b) claim.[1]

Plaintiffs cite and appear to rely upon (Plaintiffs' Mem. at 10-12) two other cases which do little to support their position. For example, plaintiffs cite Luce v. Edelstein, 802 F.2d 49, 52 (2d Cir. 1986), but the "in connection with" requirement in that case was not even remotely in issue as the underlying transaction was the sale of limited partnership interests pursuant to an Offering Memorandum. And in Pail v. Precise Imports Co., 1999 U.S. Dist. LEXIS 13401 at *12 (S.D.N.Y. Aug. 31, 1999), the Court had no difficulty concluding that the alleged fraud was in connection with the purchase or sale of securities where the misrepresentations in issue induced the plaintiff to purchase stock (albeit with non-cash consideration) and because the misrepresentations "concern[ed] the value of stock." These cases fail to address the deficiencies with respect to the "in connection with" requirement in the instant case.[2]

---

[1] One case not previously distinguished that was relied upon by plaintiffs is A.T. Brod & Co. v. Perlow, 375 F.2d 393 (2d Cir. 1967). However, that case must be read in light of various later decisions, including Chemical Bank v. Arthur Andersen & Co., 726 F.2d 930 (2d Cir. 1984). Further, A.T. Brod is factually distinguishable: the defendants placed securities orders with brokers and then refused to pay when the securities declined in value, and the value of the securities was central to defendants' scheme. Moreover, the Court in was concerned with public policy considerations associated with the type of fraud employed by defendant and refused to allow the fraudulent scheme to go unpunished. Id. at 395-97. Such policy considerations are not implicated when an ordinary breach of contract is unjustifiably characterized as securities fraud.

[2] Plaintiffs also posit that defendants' argument would apply only to buyers of securities, not sellers. However, we most assuredly make no such distinction, nor had any intention of doing so.

Plaintiffs also argue that they adequately alleged loss causation (Plaintiffs' Mem. at 12-13), but then merely offer conclusory statements of law and fact. Neither of the two cases cited are persuasive in light of the leading Second Circuit decision, Lentell v. Merrill Lynch & Co., 396 F.3d 161 (2d Cir.), cert. denied 546 U.S. 935 (2005), and its progeny, and both factually support *defendant's* argument that the economic loss must be causally related to the securities. Further, in response to defendant's tertiary argument (Defendant's Mem. at 10 n.7), plaintiffs inexplicably attempt to go beyond the factual allegations in the Complaint by submitting financial data that show corporate losses. Plaintiffs' Mem. at 12-13. However, whether or not Janel recently suffered corporate losses is hardly an issue here and does nothing to demonstrate the kind of loss required to bring a claim under the purview of 10b-5.

Perhaps more importantly, plaintiffs never even alleged (or argued) that they were actually damaged or harmed as a result of not having exclusive rights to any eBridge assets. There is no allegation that lacking such exclusive rights in any way affected or interfered with Janel's ability to conduct its business. As such, the alleged "damages" (1) do not relate to Janel's securities, and (2) are not even claimed to relate to any direct harm caused by the materialization of the alleged fraud.[3]

II. PLAINTIFFS FAIL TO DEMONSTRATE THAT THE COMPLAINT ALLEGED COMMON LAW FRAUD.

Plaintiffs' Mem. at 13-16 *seems* to respond to the two arguments made in Section II of Defendant's Mem., viz., that the Complaint fails to allege that Griffin had a duty to disclose

---

[3] The two cases cited by plaintiffs in an effort to overcome the Complaint's loss causation deficiencies are distinguishable. In Weiss v. Witcoff, 966 F.2d 109, 111 (2d Cir. 1992), the Court reversed dismissal of the claims and held that loss causation was alleged because the value of defendant's stock was reduced by the fraud. Similarly, in Robbins v. Koger Properties, Inc., 116 F.3d 1441, 1448-49 (11th Cir. 1997), the court reversed a denial of summary judgment, and entered judgment for defendant, holding that plaintiffs failed to offer evidence that the misrepresentations were a substantial cause of the decline in the stock price: "[o]ur decisions explicitly require proof of a causal connection between the misrepresentation and the investment's subsequent decline in value." Id. Both cases support defendant's argument that the losses suffered must relate to the valuation and/or price of the securities.

-3-

omissions, or that plaintiffs fulfilled their duty to investigate and thus did reasonably rely on Griffin's misstatements.

Both parties agree that a duty to disclose exists if: (1) the defendant has superior knowledge; (2) the information is not readily available to the plaintiff; and (3) the defendant knows the plaintiff is acting on a mistaken belief. However, even if plaintiffs' contentions (Plaintiffs' Mem. at 13) are correct that Griffin had "knowledge" of Cunningham's alleged rights to eBridge and that plaintiffs were acting under a mistaken belief,[4] they still failed to allege that Griffin's knowledge was "superior" or that this information was not readily available to plaintiffs. See Defendant's Mem. at 12-13 (plaintiffs had notice of the issue and access to all information).

Further, realizing they failed to plead the requisite element of "reasonable reliance," plaintiffs do little more than quote general statements of law and draw overbroad conclusions. The cases relied upon by plaintiffs are factually distinguishable,[5] and their analysis misinterprets

---

[4] To support their contention that Griffin had knowledge of plaintiffs' mistaken belief, plaintiffs' proffered an email sent by Griffin to defendant Francis, dated September 30, 2007. However, in deciding a motion to dismiss, the Court can, for present purposes, only consider the allegations in the Complaint. Since that email was not attached or referred to in the Complaint, any substantive evidence contained thereon should not be considered on this motion to dismiss. Moreover, there is nothing even in that email -- which is an internal document -- that speaks to what plaintiffs would be told or what they would or could ascertain through their direct contacts with Cunningham and his counsel. If anything, in that email Griffin was merely responding to an issue raised by co-defendant Francis and offering his view about the issue.

[5] Thus, in Mallis v. Bankers Trust Co., 615 F.2d 68, at 72-73, 81 (2d Cir. 1980), plaintiffs had no direct dealings or contact with the sellers and had no indication there was a material issue with the stock. Plaintiffs in this case cannot allege the same level of ignorance. Further, the plaintiffs in both Todd v. Pearl Woods, Inc., 248 N.Y.S.2d 975, 20 A.D.2d 911 (2d Dep't 1964), and Pail v. Precise Imports Corp., 1999 U.S. Dist. LEXIS 13401 (S.D.N.Y. Aug. 31, 1999), were not sophisticated businessmen engaged in arms' length transactions. In Todd, plaintiffs were buying a suburban home (and that was a misrepresentation case, not an omission case), and in Pail, the plaintiff was an employee with no access to material documents. Finally, the decision in Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1541-43 (2d Cir. 1997), does not help plaintiffs. The Court held that the sophisticated buyer (the counter-claimant Protective) had a duty to protect itself even where the deal in question was structured in a way that Protective had to rely on seller's oral representations and commit to the deal before it had the opportunity to review material documents. While the issue arose in a complicated appeal from summary judgment, the Court made the clear point that "It is well established that 'where sophisticated businessmen engaged in major transactions enjoy access to critical information but fail to take advantage of that access, New York courts are particularly disinclined to entertain claims of justifiable reliance.'" (Citations omitted). The failure to take the necessary steps to protect itself "render[ed] reliance on the misrepresentation [by Protective] unreasonable as a matter of law." In the instant

-4-

the case law relied upon by defendant (see Defendant's Mem. at 13).[6] Finally, plaintiffs seem to conclude summarily (at 16) that receiving assurances from defendants (without specifying who) satisfied the requisite element of reasonable reliance. But in one case upon which plaintiffs rely, Mallis v. Bankers Trust Co., 615 F.2d 68 (2d Cir. 1980), the Court states, "[d]ecisions holding that reliance on misrepresentations was not justified are generally cases in which plaintiff was placed on guard or practically faced with the facts." Id. at 81. Plaintiffs thus fall short since they had the means of knowing the truth behind the alleged misrepresentations and "were aware of a quickly evolving situation that directly affected the subject matter of the Asset Purchase Agreement." Therefore, plaintiffs had a duty to investigate and failed to do so.

### III. PLAINTIFFS' REMAINING ARGUMENTS DO NOT OVERCOME THE PROBLEMS WITH THE COMPLAINT.

A. Pleading Deficiencies.

Defendant's Mem. (at 14-17) identified two areas in which the Complaint failed to comply with the particularity requirements set forth in 15 U.S.C. § 78u-4(b)(1) and (b)(2) (PSLRA) and Fed. R. Civ. P. 9(b): (1) the lack of particularized allegations concerning Griffin; and (2) the allegations improperly clumped defendants so that it was impossible to understand which defendant was being referred to in a particular allegation. Plaintiffs pooh-pooh these deficiencies by virtually ignoring defendant's argument and offering a simple conclusory

---

case, Janel was aware of the issue, and had unfettered access to all parties to the Cunningham dispute. All it had to do was ask -- either the seller or Cunningham -- and all information that it claims was withheld could easily have been obtained, analyzed and reviewed, and the contract could have been modified or perhaps not executed if the information about Cunningham was unacceptable. Instead, plaintiffs rushed to complete its acquisition. Lazard thus affords plaintiffs no cover.

[6] While there were contractual disclaimers of reliance in Grumman Allied Indus., Inc. v. Rohr Indus., Inc., 748 F.2d 729 (2d Cir. 1984), these did not preclude the Court from holding that the plaintiffs had a duty to investigate the accessible material information and, by not doing so, they did not establish justifiable reliance. Id. at 738.

response. Plaintiffs thus appear unable to make specific allegations, thereby failing to satisfy their elevated pleading burden.

      B. Conversion.

Plaintiffs' response to defendant Griffin's conversion argument is at best conclusory and ill-founded. Plaintiffs state, "although Francis [sic?] may have not yet received any shares of the Series B Preferred Stock, he has undoubtedly impaired Janel's rights" (Plaintiffs' Mem. at 17),[7] but then fail to explain how Griffin impaired Janel's rights over its stock. Moreover, the cases cited by plaintiffs actually hold that the converting party must take some action to deny the plaintiff access to ownership of the property, an action that plainly was not alleged here.[8]

      C. Unjust Enrichment.

Notwithstanding plaintiffs' bizarre suggestion to the contrary (Plaintiffs' Mem. at 18), it seems fairly evident from the face of the Complaint that there is no contention that the Asset Purchase Agreement is not a valid and enforceable contract. Plaintiffs have not alleged facts to indicate that the validity of this contract is in question, nor have they proffered to any defendant the return of all the assets which they have acquired and (according to public press releases) integrated into their company. As a result, plaintiffs are precluded from bringing a claim for unjust enrichment.[9]

---

[7] By naming Francis, not Griffin, in this sentence, we assume plaintiffs made a typographical error.

[8] The cases cited by plaintiffs provide no basis for dismissing this claim. In State of New York v. Seventh Regiment Fund, Inc., 98 N.Y.2d 249, 260, 746 N.Y.S.2d 637, 645-46 (2002), the court held that the party accused of conversion must take an affirmative act that informs others of his intention to interfere with ownership, for there to be a claim for conversion. Similarly, in Pease v. Smith, 61 N.Y. 477, 481 (1875), the court held that some unauthorized act by the defendant is required. And in Vigilant Ins. Co. of Am. v. Housing Auth. of City of El Paso, Tex., 87 N.Y.2d 36, 45, 637 N.Y.S.2d 342, 347 (1995), the Court held the conversion claim did not accrue until the defendant took an affirmative act -- put a "stop" on plaintiff's bonds and refused to honor title.

[9] The sole case cited by plaintiffs, Bazak Int'l Corp. v. Tarant Apparel Group, 347 F. Supp. 2d 1, 4 (S.D.N.Y. 2004), arose in a patently different context where there was a bona fide dispute as to the existence of a contract. The court also acknowledged there is no unjust enrichment where the parties did enter into a contract.

D. <u>Breach of Covenant of Good Faith and Fair Dealing.</u>

In response to the obvious infirmity in the Complaint, plaintiffs' mental gymnastics somehow lead them to conclude that defendant Griffin is a party to the Asset Purchase Agreement. However, the document speaks for itself: the parties to the Asset Purchase Agreement are Janel World Trade, Ltd., Janel Newco, Inc. and Order Logistics, Inc., not Brian Griffin individually. See Hutner Aff., Ex. B. Griffin did not even sign the agreement on behalf of Order Logistics, Inc., nor do plaintiffs allege that he was in any way involved in negotiating the agreement. As a non-party to the contract, Griffin did not make any covenant of good faith and fair dealing, so this claim should be dismissed.

## IV. THE COMPLAINT AND THE RESPONSE TO DEFENDANT'S MOTION IMPLICATES THE NEED FOR SANCTIONS UNDER RULE 11.

The blatant insufficiency of plaintiffs' securities fraud claims and at least three of the four state law claims raises doubts as to whether plaintiffs' counsel has met his obligations under Fed. R. Civ. P. 11(b), especially given the doubts raised by the Court at the pre-motion conference held on May 1, 2008. Under PSLRA, "[i]n any private action arising under this title, upon final adjudication of the action, the court shall include in the record specific findings regarding compliance by each party and each attorney…with each requirement of Rule 11(b) of the *Federal Rules of Civil Procedure* as to any complaint, responsive pleading, or dispositive motion." 15 U.S.C. 78u-4(c)(1). Under Rule 11(b)(2) and 11(c), if the court determines that a pleading or motion fails to set forth "claims, defenses, and other legal contentions [that] are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law …," then the court may impose appropriate sanctions, including attorneys' fees.

Even after notice of the problems with the Complaint, plaintiffs continued to press ahead with a meritless 10b-5 claim. An award of attorneys' fees may well be in order for that, as well

as for the conversion, unjust enrichment and breach of covenant claims to the extent they have been directed at defendant Griffin.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in his prior submission, defendant Brian Griffin respectfully submits that the Complaint should be dismissed in its entirety as against him.

Dated: New York, New York
      June 20, 2008

                            HUTNER KLARISH LLP
                            Attorneys for Defendant Brian P. Griffin
                            1359 Broadway, Suite 2001
                            New York, New York 10018
                            212-391-9235

                            By:  s/Eric S. Hutner
                                  Eric S. Hutner (EH 6836)