UNITED STATES DISTRICT COURT
SOURTHERN DISTRICT OF NEW YORK

———————————

№ 08 Civ. 1327 (RJS)

———————————

JANEL WORLD TRADE, LTD. and ORDER LOGISTICS, INC.,

Plaintiffs,

VERSUS

WORLD LOGISTICS SERVICES, INC., RICHARD S. FRANCIS, and BRIAN P. GRIFFIN,

Defendants.

———————————

MEMORANDUM AND ORDER
March 20, 2009

———————————

RICHARD J. SULLIVAN, District Judge:

Plaintiffs Janel World Trade, Ltd. ("Janel") and Order Logistics, Inc. ("Order Logistics") (collectively, "Plaintiffs") bring this action against Defendants World Logistics Services, Inc. ("World Logistics"), Richard S. Francis ("Francis"), and Brian P. Griffin ("Griffin") (collectively, "Defendants"), alleging federal securities fraud claims, as well as common law claims of fraud, conversion, unjust enrichment, and breach of the implied covenant of good faith and fair dealing.

Before the Court are separate motions to dismiss by Francis and Griffin pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, both Defendants' motions are denied.

I. BACKGROUND

The following facts are taken from the Complaint. The Court assumes all allegations to be true for the purpose of deciding the motions before it, and construes all alleged facts in the light most favorable to Plaintiff.

*See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006).

### A. Facts

The basis for this action is Plaintiffs' allegation that Defendants fraudulently induced Janel to purchase World Logistics' assets in exchange for, *inter alia*, cash and Janel securities. Plaintiffs allege that they provided this consideration in reliance on material omissions and misrepresentations by Defendants, which led Plaintiffs to believe that they were obtaining exclusive rights to the World Logistics assets that were the subject of the parties' agreement.

#### 1. Parties

Plaintiff Janel is a Nevada corporation with its principal place of business in Jamaica, New York. (Compl. ¶ 4.) Janel acts as a "logistics services provider for importers and exporters worldwide." (*Id.*) Janel is registered with the Securities and Exchange Commission as an issuer of publicly traded securities. (*Id.*) Those securities were issued in July 2002 and are traded on the Over-The-Counter Bulletin Board. (*Id.*) Plaintiff Order Logistics is a Nevada corporation and wholly-owned subsidiary of Janel, "which purchased [the] assets and freight logistics operations of [Defendant] World Logistics . . . ." (*Id.*)

Defendant World Logistics is a Delaware corporation, "which had been in the business of arranging transportation of goods for various companies utilizing sophisticated proprietary computer software . . . ." (*Id.* ¶ 5.) During the time period relevant to this action, Defendant Francis was the President of World Logistics and one of its principal shareholders. (*Id.* ¶ 6(a).) Defendant Griffin was World Logistics' Chief Executive Officer ("CEO") and also a principal shareholder. (*Id.* ¶ 6(b).) Plaintiffs allege that, in addition to acting as officers of World Logistics, Francis and Griffin were personally liable for World Logistics' "unpaid and overdue payroll taxes," and that they had personally guaranteed "various World Logistics debt obligations," including a $648,000 debt to the National Bank of South Carolina. (*Id.* ¶ 15.)

#### 2. Negotiation of the Purchase Agreement

In August 2006, Janel and World Logistics entered into a "Strategic Memorandum of Understanding," in which Janel undertook to provide "freight logistics services" to both corporations' customers using proprietary software then owned by World Logistics. (*Id.* ¶ 11.) One year later, in August 2007, Janel, Order Logistics, and World Logistics began to contemplate a deal in which Plaintiffs would purchase exclusive rights to "certain proprietary assets of World Logistics," including World Logistics' proprietary software, customer list, certain employees, and offices in Champaign, Illinois and Greenville, South Carolina. (*Id.* ¶ 12.)

Plaintiffs allege that, during the course of these negotiations, "Francis repeatedly represented to [Janel] that Janel would receive exclusive rights to the assets being purchased from World Logistics." (*Id.*) However, while conducting due diligence relating to the transaction, Plaintiffs discovered a series of liens on World Logistics' assets resulting from financing agreements and other overdue obligations. (*Id.* ¶ 14.) Plaintiffs allege that the aggregate amount of these debts was approximately $2.3 million. (*Id.*)

Plaintiffs were unwilling to acquire World Logistics' assets subject to these liens, and they allege that, "on or before October 5, 2007," they circulated to Defendants a draft purchase agreement that "explicitly and repeatedly required that all outstanding liens had to be satisfied and released, and all of the assets and rights being conveyed to Plaintiffs were to be *exclusive and without any conflicting use*." (*Id.* ¶ 19 (emphasis in original).)

3.  World Logistics' Third-Party Settlement

Plaintiffs allege that Defendants' proprietary software was developed by a company named eBridge Technologies, Inc. ("eBridge"). (*Id.* ¶ 16.) World Logistics acquired eBridge, as well as the software, from Braddock Cunningham ("Cunningham") and others through two agreements dated June 1, 2006 and December 20, 2006, respectively. (*Id.*) In October 2006, pursuant to a financing agreement arising out of World Logistics' acquisition of eBridge, Cunningham filed a lien against World Logistics' assets in South Carolina. (*Id.* ¶ 17.)

Plaintiffs allege that World Logistics breached its agreements regarding eBridge with Cunningham, after which Cunningham declared a default on the lien against World Logistics' assets in South Carolina. (*Id.* ¶ 18.) On October 5, 2007, Plaintiffs received a letter from Cunningham's counsel asserting that World Logistics had breached its agreement with Cunningham and "demand[ing] that no transaction be consummated without Cunningham's consent." (*Id.* ¶ 20.)

Janel immediately advised Defendants of Cunningham's October 5, 2007 letter via email. (*Id.* ¶ 21.) Defendants replied "within minutes," indicating that the dispute with Cunningham would be "promptly resolved . . . ." (*Id.* ¶ 22.) On October 10, 2007, Janel "received a copy" of an email from Francis to lawyers for World Logistics, Griffin, Cunningham, and others, which indicated that a preliminary settlement had been reached between Defendants and Cunningham. (*Id.* ¶ 23.)

On October 12, 2007, Janel "received a copy" of an email from World Logistics' counsel to Cunningham's counsel proposing terms of a settlement under which Cunningham would release all liens against World Logistics upon receipt of $7,500 and 30,000 Class B Shares of Janel's securities. (*Id.* ¶ 24.) Janel was privy to a response from Cunningham's lawyer, which was sent seven minutes after the initial email, consenting to the proposed settlement and a release of the liens on those conditions. (*Id.*)

Defendants executed the settlement agreement with Cunningham on or about October 16, 2007 (the "Cunningham Settlement"). (*Id.* ¶ 1.)[1] Plaintiffs allege that Defendants never provided them with any additional information regarding the Cunningham Settlement, and never indicated that the terms of that settlement differed

---

[1] Plaintiffs do not specify the date on which the Cunningham Settlement was executed. (*See* Compl. ¶ 1.) However, they allege that the agreement was signed "only two days before the closing of the asset sale" between Plaintiffs and Defendants, which took place on October 18, 2007. (*Id.* ¶¶ 1, 9, 25.)

materially from those described in the October 12, 2007 emails. (*Id.* ¶ 27.)

However, Plaintiffs subsequently learned that, in addition to providing the $7,500 and 30,000 shares of Janel stock, Defendants also granted Cunningham "nonexclusive" rights to certain World Logistics assets. (*Id.* ¶ 26.) Plaintiffs allege that Defendants knew, or should have known, that the terms of the Cunningham Settlement effectively precluded Plaintiffs from subsequently obtaining the exclusive rights to the World Logistics assets at issue in the purchase agreement that was being negotiated between Plaintiffs and Defendants. (*Id.* ¶ 27.)

4. The Purchase Agreement

Nevertheless, on October 18, 2007, Plaintiffs executed an agreement to purchase certain World Logistics assets (the "Purchase Agreement"). (*Id.* ¶¶ 9, 25.) Plaintiffs allege that, under the terms of the Purchase Agreement, they agreed to: (1) transfer to Defendants 285,000 shares of Janel's Class B convertible preferred stock, (2) satisfy, on behalf of Defendants, a $2.3 million "overdue payroll debt," and (3) pay $125,000 to Griffin. (*Id.* ¶ 2.) Plaintiffs further allege that, in exchange for that consideration, they were to receive exclusive rights to World Logistics' proprietary software, its customer list, the World Logistics office in Greenville, South Carolina, and the employees that worked in that office. (*Id.* ¶ 1.)

However, when Janel personnel arrived at World Logistics' South Carolina office, Plaintiffs learned that rights to the employees and customers of the office had been acquired by Cunningham pursuant to the Cunningham Settlement. Plaintiffs allege that they did not learn of the full terms of the Cunningham Settlement until December 10, 2007. (*Id.* ¶ 31.)

Plaintiffs argue that, but for Defendants' misrepresentations and omissions regarding World Logistics' assets made during the negotiation and execution of the Purchase Agreement, they would not have entered into the transaction. (*Id.* ¶ 28.) As a result of these misrepresentations, Plaintiffs allege that they sustained losses in excess of $1 million in connection with the transfer of Janel securities, and not less than a total of $2,925,000 in damages. (*Id.* ¶¶ 2, 34.)

B. Procedural History

Plaintiffs commenced this action on February 11, 2008. (Doc. No. 1.) Plaintiffs have not filed proof of service with the Clerk of the Court as to any Defendant, and Defendant World Logistics has not appeared in this action. However, counsel for Griffin and Francis filed notices of appearance on March 11, 2008 and April 16, 2008, respectively. (Doc. Nos. 3, 5.) On May 23, 2008, Francis and Griffin filed separate motions to dismiss the Complaint. (Doc. Nos. 9, 13.)

II. Standard of Review

On a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept as true all of the factual allegations in the Complaint and draw all reasonable inferences in Plaintiffs' favor. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *Grandon v. Merrill Lynch & Co.*, 147 F.3d 184, 188 (2d

Cir. 1998). Nonetheless, "[f]actual allegations must be enough to raise a right of relief above the speculative level, on the assumption that all of the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).

Ultimately, Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. The Complaint must therefore satisfy "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007). If Plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570.

### III. DISCUSSION

Plaintiffs bring claims for securities fraud under sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b) and Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder, as well as common law claims for fraud, conversion, unjust enrichment, and breach of the covenant of good faith and fair dealing. Francis and Griffin filed separate motions to dismiss the Complaint, which contain similar arguments as to each of Plaintiffs' claims. For the reasons set forth below, both motions are denied.

#### A. Securities Fraud

In order to sustain a private cause of action for securities fraud under section 10(b) and Rule 10b-5, a plaintiff must adequately plead: (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) transaction causation; (5) economic loss; and (6) loss causation. *See Heller v. Goldin Restructuring Fund, L.P.*, 590 F. Supp. 2d 603, 613 (S.D.N.Y. 2008).

With respect to Plaintiffs' securities fraud claims, Griffin argues that Plaintiffs have not alleged with sufficient particularity that he engaged in a misrepresentation or omission; Francis argues that Plaintiffs have failed to adequately plead scienter, transaction causation, and economic loss; and both Defendants argue that Plaintiffs' allegations are insufficient as to the remaining elements of Plaintiffs' securities fraud claims.

#### 1. Particularity

Griffin argues that Plaintiff's securities fraud claims do not satisfy the heightened pleading requirements of the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(b), and Rule 9(b) of the Federal Rules of Civil Procedure because they do not plead misrepresentations or omissions with sufficient particularity. (Griffin Mem. at 14.)

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "This pleading constraint serves to provide a defendant with fair notice of a plaintiff's claim, safeguard his reputation from improvident charges of wrongdoing, and protect him against strike suits." *ATSI Commc'ns*, 493 F.3d at 99 (citing *Rombach v.*

*Chang*, 355 F.3d 164, 171 (2d Cir. 2004)). Read in connection with Rule 9(b), the PSLRA requires a securities fraud plaintiff to: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *In re PXRE Group, Ltd., Sec. Litig.*, --- F. Supp. 2d ----, No. 06 Civ. 3410 (RJS), 2009 WL 539864, at *11 (S.D.N.Y. Mar. 4, 2009) (internal quotations omitted).

Plaintiffs allege that all Defendants — World Logistics, Francis, and Griffin — failed to disclose to Plaintiffs at any time that the Cunningham Settlement granted Cunningham rights to portions of the property at issue in the Purchase Agreement. (Compl. ¶ 25.) Griffin concedes that this alleged fraudulent omission has been pleaded with adequate particularity under Rule 9(b) and the PSLRA. (Griffin Mem. at 15.) Therefore, Griffin's argument, according to its own terms, does not provide a basis for dismissal of the securities fraud claims.

Moreover, in light of his concession regarding the omission alleged in paragraph 25 of the Complaint, no successful objection on particularity grounds can be made to Plaintiffs' allegation that, by executing the Purchase Agreement, "World Logistics, Francis, *and Griffin* intentionally deceived Janel's officers into believing that [Janel]" had acquired exclusive rights to World Logistics' assets. (*Id.* ¶ 30 (emphasis added).) Although there appears to be a factual dispute regarding whether Griffin is a party to the Purchase Agreement, *see infra* Section II.E, the Court assumes the truth of Plaintiffs' allegations for the purpose of resolving these motions. Therefore, because Plaintiffs allege that Griffin was a party to the Purchase Agreement, this allegation also satisfies Rule 9(b) and the PSLRA. Accordingly, Griffin's motion to dismiss Plaintiffs' securities fraud claims on particularity grounds is denied.[2]

2. Scienter

"Under the PSLRA, in order to plead scienter adequately . . . , it is necessary to 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *PXRE Group*, 2009 WL 539864, at *14 (quoting 15 U.S.C. § 78u-4(b)(2)) (emphasis in original). "The requisite state of mind in a Rule 10b-5 action is 'an intent to deceive, manipulate or defraud.'" *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 168 (2d Cir. 2000) (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976)).

In the Second Circuit, there are two ways in which a securities fraud plaintiff can adequately plead scienter: (1) "by alleging facts to show that defendants had both motive and opportunity to commit fraud," or (2) "by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *PXRE Group*, 2009 WL 539864, at *14 (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) and citing *Tellabs, Inc. v.*

---

[2] Griffin presents identical arguments regarding the particularity of Plaintiffs' allegations with respect to their common law fraud claim. (Griffin Mem. at 14.) For the reasons stated herein, that motion is likewise denied.

*Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2509-10 (2007)).

Francis's argument focuses on the "motive and opportunity" prong of scienter. With respect to opportunity, Plaintiff has adequately pleaded that Francis, as an officer of World Logistics, had an opportunity to commit securities fraud. *Id.* at *15; *see also Rothman v. Gregor*, 220 F.3d 81, 93 (2d Cir. 2000). With respect to motive, Defendant Francis argues that Plaintiff has failed to "ascribe a particular motive to defendant Francis that 'entail[s] concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged.'" (Francis Mem. at 10 (quoting *Kalnit v. Eichler*, 264 F.3d 131, 138 (2d Cir. 2001).) This argument is unavailing.

Because such a motive can be ascribed to most corporate officers and directors, an executive's interest in the well-being of the company for which he or she works is normally not a sufficiently "concrete and personal benefit" for the purposes of pleading scienter. *Kalnit*, 264 F.3d at 138. However, Plaintiffs allege that Francis and Griffin had different incentives than most corporate executives. Specifically, Plaintiffs allege that both Defendants "were 'responsible officers' of World Logistics who were *personally liable* for" World Logistics' $2.3 million in "unpaid and overdue payroll taxes . . . ." (Compl. ¶ 15 (emphasis added).) These Defendants' direct and personal liability to the corporate entity they served created an incentive structure that is distinguishable from that faced by most officers and directors.

The Court is mindful that speculative allegations regarding personal liability that may *potentially* attach to an individual defendant are insufficient to give rise to a strong inference of scienter under the PSLRA. *See Kalnit*, 264 F.3d at 140 ("[T]he *avoidance* of personal liability motive is too speculative and conclusory to support scienter." (emphasis added)). However, Plaintiffs allege that World Logistics was a closely held company that was already in debt, and that Defendants Francis and Griffin were personally liable for a portion of that debt at the time Francis was participating in the negotiation of the transaction that is the subject of Plaintiffs' claims. Thus, the personal motive alleged by Plaintiffs is not the mere speculative possibility that, in the future, Defendants might be held liable for a subsequent breach of the Purchase Agreement. *See id.* (noting that there was "no reason to expect" that the director defendants would be sued in the future for breach of the contract at issue). Rather, Plaintiffs allege that Francis had incentives relating to *present, existing*, *and personal* liability to World Logistics at the time of the negotiations between the parties, which created a concrete and personal motive for him to participate in a scheme to defraud Plaintiffs.

Thus, because Plaintiffs allege that Francis was personally liable for World Logistics' debts, executing the Purchase Agreement would — and allegedly did — provide direct, concrete, and personal benefits to Francis by reducing his then-existing personal financial exposure to World Logistics' creditors. Under these circumstances, Francis "had both motive and opportunity to commit fraud." *Shields*, 25 F.3d at 1128. Accordingly, Plaintiffs have adequately pleaded scienter.

3. "In Connection With"

Griffin and Francis both assert that the "in connection with" element is not satisfied because the Purchase Agreement was merely an asset sale in which the consideration happened to include securities. (Francis Mem. at 10; Griffin Mem. at 5.) However, "Rule [10b-5], like § 10(b) itself, broadly prohibits deception, misrepresentation, and fraud 'in connection with the purchase or sale of any security.'" *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 78 (2006). "[M]aking a specific promise to perform a particular act in the future while secretly intending not to perform that act may violate Section 10(b) where the promise is part of the consideration for the transfer of securities." *Luce v. Edelstein*, 802 F.2d 49, 55 (2d Cir. 1986); *see also Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) (citing *Luce*); *United States v. Rudi*, 902 F. Supp. 452, 456-57 (S.D.N.Y. 1995). "'The purpose of § 10(b) and Rule 10b-5 is to . . . make sure that . . . sellers of securities are not tricked into parting with something for a price known to the buyer to be inadequate or for a *consideration known to the buyer not to be what it purports to be*." *Nationwide Cellular Serv., Inc. v. Am. Mobile Commc'ns, Inc.*, Nos. 90 Civ. 6493 (LBS), 91 Civ. 3587 (LBS), 1991 WL 233284, at *4 (S.D.N.Y. Oct. 29, 2001) (quoting *Chem. Bank v. Arthur Andersen & Co.*, 726 F.2d 930, 943 (2d Cir. 1984)) (emphasis added).

Plaintiffs allege that, in reliance on Defendants' misrepresentations and omissions, Janel entered into the Purchase Agreement and transferred its securities to Defendants in exchange for an inadequate amount of consideration. (Compl. ¶¶ 2, 30.) Plaintiffs further allege that they did not receive the amount of compensation contemplated by the Purchase Agreement because, contrary to the terms of that agreement and Defendants' representations during negotiations, the Cunningham Settlement precluded Plaintiffs from obtaining exclusive rights to the World Logistics assets at issue.

"Rule 10b-5 prohibits fraud in connection with the purchase of, or in connection with *a contract to purchase*, stock." *Sulkow v. Crosstown Apparel Inc.*, 807 F.2d 33, 36 (2d Cir. 1986) (emphasis added). Therefore, these allegations, if proven, would satisfy the "in connection with" requirement. *See Weiss v. Wittcoff*, 966 F.2d 109, 112 (2d Cir. 1992) (finding "in connection with" element satisfied where misrepresentation that defendants would supply plaintiff with goods in the future was an "important inducement in persuading" the plaintiff to sell his stock); *SEC v. Drysdale Sec. Corp.*, 785 F.2d 38, 41 (2d Cir. 1986). Accordingly, Plaintiffs have adequately pleaded the "in connection with" element of their securities fraud claims.

4. Transaction Causation

Francis argues that Plaintiffs' allegations do not satisfy the transaction causation element of their securities fraud claims because the Complaint does not contain an express allegation that "Janel would *not* have consummated the acquisition of World Logistics" if Plaintiffs had known of the full terms of the Cunningham Settlement. (Francis Mem. at 8 (emphasis in original).)

The transaction causation element of a securities fraud claim "requires only an allegation that 'but for the claimed

misrepresentations or omissions, the plaintiff would not have entered into the detrimental securities transaction.'" *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 172 (2d Cir. 2005) (quoting *Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*, 343 F.3d 189, 197 (2d Cir. 2003)).

Plaintiffs have adequately pleaded transaction causation. Plaintiffs allege that "during the course of negotiations . . . Francis repeatedly represented to . . . Janel . . . that [it] would receive the exclusive rights to the assets being purchased from World Logistics." (Compl. ¶ 13.) Plaintiffs further allege that, "on or before October 5, 2007," they circulated to Defendants a draft purchase agreement that "explicitly and repeatedly required that all outstanding liens had to be satisfied and released, and all of the assets and rights being conveyed to Plaintiffs were to be *exclusive and without any conflicting use*." (*Id.* ¶ 19 (emphasis in original).) According to the Complaint, "[o]n October 5, 2007," Defendants responded to the demands in Plaintiffs' draft agreement by "advis[ing Janel's] officers that the dispute with Cunningham would be promptly resolved," and that Defendants "intentionally deceived Janel's officers into believing it would have acquired the exclusive rights to" World Logistics' assets through the Purchase Agreement. (*Id.* ¶¶ 22, 30.) The Court finds these allegations sufficient to establish that, but for Defendants' alleged misrepresentations and omissions regarding the status of the World Logistics assets, Janel would not have transferred its securities to Defendants. Accordingly, Plaintiffs have adequately pleaded transaction causation.

### 5. Economic Loss

Francis argues that Plaintiffs have not alleged "that Janel actually issued and transferred [securities] to any of the defendants . . . ." (Francis Mem. at 8.) This contention is meritless. Plaintiffs allege that "Defendants World Logistics, Francis and Griffin misrepresented and omitted material facts, . . . in connection with *Defendants' acquisition of Janel securities* by fraudulently inducing Plaintiffs' purchase of World Logistics' assets." (Compl. ¶ 32 (emphasis added).) Plaintiffs further allege that they sustained over $1 million in losses in connection with their securities fraud claims, and over $2,925,000 in total damages. (*Id.* ¶¶ 2, 34.)

These allegations are sufficient to plead economic loss. *See Heller*, 590 F. Supp. 2d at 613 n.13 (finding economic loss adequately pleaded based on allegation of funds lost due to the defendants' allegedly fraudulent conduct). Accordingly, Francis's motion to dismiss on this ground is denied.

### 6. Loss Causation

Francis and Griffin argue that Plaintiffs have failed to adequately plead loss causation. (Griffin Mem. at 9; Francis Mem. at 4.) The element of loss causation is codified in the PSLRA: "[T]he plaintiff shall have the burden of proving that the act or omission of the defendant alleged to violate this chapter caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C. § 78u-4(b)(4). Thus, "[l]oss causation 'is the causal link between the alleged misconduct and the economic harm ultimately

suffered by the plaintiff.'" *Lentell*, 396 F.3d at 174 (quoting *Emergent Capital Inv. Mgmt.*, 343 F.3d at 197).

Although "[t]here are several possible methods of pleading loss causation," Plaintiffs advance a "direct" loss causation theory that fits comfortably within the PSLRA's definition. *Heller*, 590 F. Supp. 2d at 623 n.16 (quoting *In re Initial Pub. Offering Sec. Litig*, 544 F. Supp. 2d 277, 289 (S.D.N.Y. 2008)). Plaintiffs allege that Defendants made false and misleading statements in order to obtain, *inter alia*, "285,000 shares of newly authorized Class B convertible preferred stock of Janel . . . with a current value of approximately $3,700,000 . . . ." (Compl. ¶ 2.) Thus, the relevant "act or omission" by Defendants, 15 U.S.C. § 78u-4(b)(4), is Defendants' failure to disclose that they were unable to provide exclusive rights to World Logistics' assets and their subsequent representation in the Purchase Agreement that they were conveying such exclusive rights.

Plaintiffs also allege that they lost roughly $1 million as a consequence of the sale of their securities in connection with the Purchase Agreement. (*Id.* ¶ 35.) Thus, the "loss for which [Plaintiffs] seek to recover damages," 15 U.S.C. § 78u-4(b)(4), is the difference between: (1) the value of the consideration they provided to Defendants with the expectation of receiving exclusive rights to certain World Logistics assets and (2) the *actual* value of the assets proferred by Defendants.

In sum, Plaintiffs allege that "the subject of the fraudulent statement or omission" — *i.e.*, the promised conveyance of exclusive rights to the sought-after World Logistics assets — "was the cause of the actual loss suffered." *Lentell*, 396 F.3d at 173. These allegations are sufficient to establish loss causation at the pleadings stage. *See Emergent Capital Inv. Mgmt.*, 343 F.3d at 199 (noting that, to establish loss causation, securities fraud plaintiffs must "demonstrate a causal connection between the content of the alleged misstatements or omissions and the harm actually suffered" (internal quotations omitted)); *cf. Weiss*, 966 F.2d at 111 (finding loss causation adequately pleaded where the plaintiff alleged that he transferred securities to the defendants in reliance on the defendant's misrepresentations, and "defendants' failure to fulfill those promises foreseeably caused [the plaintiff's company's] financial condition to deteriorate"). Accordingly, Plaintiffs have adequately pleaded loss causation.

### B. Common Law Fraud

With respect to Plaintiffs' common law fraud claim, Griffin argues that: (1) he had no duty to disclose the terms of the Cunningham Settlement, and (2) Plaintiffs could not reasonably rely on any such omission. (Griffin Mem. at 11.) Neither argument necessitates dismissal of this claim.

First, Plaintiffs have adequately alleged that Griffin had a duty to disclose the terms of the Cunningham Settlement. A duty to disclose between negotiating parties arises, *inter alia*, where "one party has superior knowledge of certain information, that information is not readily available to the other party, and the first party knows that the second party is acting on the basis of mistaken knowledge." *Manley v. AmBase Corp.*, 126 F. Supp. 2d 743, 756 (S.D.N.Y. 2001) (citing

*Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank*, 57 F.3d 146, 155 (2d Cir. 1995)). The allegations in the Complaint support an inference that each of these circumstances was present in connection with the negotiation and execution of the Purchase Agreement.

Plaintiffs allege that Defendants, including Griffin, possessed unique knowledge of the Cunningham Settlement, and that Plaintiffs did not gain access to that settlement agreement until December 10, 2007, nearly two months after the Purchase Agreement was executed. (Compl. ¶¶ 25, 29.) Plaintiffs further allege that, not only were they unaware that the Cunningham Settlement placed encumbrances on World Logistics' assets, but also that Defendants "knowingly and intentionally" hid this information and "intentionally deceived" Plaintiffs during the negotiation of the Purchase Agreement. (*Id.* ¶¶ 27, 28, 30.) Finally, Plaintiffs allege that, throughout the negotiation of the Purchase Agreement and up until its execution, they made clear to Defendants that they would not proceed with the transaction unless World Logistics conveyed its assets and rights "*exclusive*[*ly*] *and without any conflicting use*." (*Id.* ¶ 19 (emphasis in original); *see also id.* ¶¶ 27, 28, 30.) Construing all inferences in Plaintiffs' favor, these allegations are sufficient to establish that Defendants possessed superior knowledge regarding the status of their assets, that Plaintiffs lacked access to the full terms of the Cunningham Settlement, and that Defendants were aware of Plaintiffs' ignorance regarding the status of World Logistics' assets in light of that agreement. Accordingly, Defendants had a duty to disclose to Plaintiffs that the Cunningham Settlement granted Cunningham rights to portions of World Logistics' assets.

Second, Griffin argues that Plaintiffs could not reasonably rely on any alleged omissions regarding the terms of the Cunningham Settlement because Plaintiffs failed to investigate the terms of that agreement. However, Plaintiffs' fraud claim is not based solely on alleged omissions. Although Plaintiffs allege that Defendants failed to disclose the material terms of the Cunningham Settlement, they also allege that Defendants *falsely represented* in the Purchase Agreement that they were conveying to Janel exclusive rights to certain assets. (*See* Compl. ¶ 1.) Even if Plaintiffs' claims were based solely on omissions, "[w]hen matters are held to be peculiarly within [the] defendant's knowledge, it is said that [the] plaintiff may rely without prosecuting an investigation, as he [or she] has no independent means of ascertaining the truth." *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1542 (2d Cir. 1997). Therefore, Plaintiffs' alleged reliance was not unjustified as a matter of law.

Moreover, although Plaintiffs do not allege that they fully investigated the Cunningham Settlement, they took affirmative steps to protect themselves against their ignorance of its terms by "inserting appropriate language in the [Purchase Agreement] agreement for [their] protection . . . ." *Lazard Freres*, 108 F.3d at 1543 (citing *Rodas v. Manitaras*, 552 N.Y.S.2d 618, 620 (1st Dep't 1990)). Specifically, Plaintiffs allege that they hedged against this risk by requiring Defendants to represent in the Purchase Agreement that World Logistics' assets were being conveyed "exclusively" to

Janel. (*See* Compl. ¶ 27.) Therefore, assuming the truth of Plaintiffs' allegations, Griffin cannot establish that Plaintiffs' reliance on Defendants' misrepresentations and omissions was unreasonable. Accordingly, Griffin's motion to dismiss Plaintiffs' fraud claim is denied.

### C. Conversion

Griffin and Francis both argue that Plaintiffs' conversion claim must be dismissed because Plaintiffs do not allege that either Defendant "wrongfully exercised dominion and control" over Plaintiffs' money and shares of Janel. (Francis Mem. at 11; Griffin Mem. at 17.)

"New York law recognizes an action for conversion of money, but requires the Plaintiff to have 'ownership, possession or control of the money' before its conversion." *Fantozzi v. Axsys Techs., Inc.*, No. 07 Civ. 02667 (LMM), 2008 WL 4866054, at *9 (S.D.N.Y. Nov. 6, 2008) (quoting *ESI, Inc. v. Coastal Power Prod. Co.*, 995 F. Supp. 419, 433 (S.D.N.Y. 1998)). Plaintiffs may also bring a conversion claim under New York State law based on the theory that Defendants wrongfully took possession of their securities. *See Thyroff v. Nationwide Mut. Ins. Co.*, 8 N.Y.3d 283, 289 (N.Y. 2007).

Based on these principles, Plaintiffs have sufficiently pleaded a cause of action for conversion under New York State law. Plaintiffs allege that Defendants defrauded them in order to "obtain for their own use" Janel securities, as well as cash payments of "long overdue debts" owed by Defendants. (Compl. ¶ 2.) They further allege that Defendants "wrongfully exercised dominion and control over Plaintiffs' property," including the Janel securities and "monies which belonged to Plaintiffs . . . ." (*Id.* ¶ 39.) Although Defendants argue that Janel never transferred the securities to them (Griffin Mem. at 17 n.10; *see also* Francis Mem. at 11), that contention conflicts with Plaintiffs' allegations and cannot be resolved on a motion to dismiss.

Defendants also argue that Plaintiffs cannot bring a conversion claim because the Purchase Agreement governs their dispute. Defendants are correct that "'[a]n action for conversion cannot be validly maintained where damages are merely being sought for breach of contract.'" *Aramony v. United Way of Am.*, 949 F. Supp. 1080, 1085 (S.D.N.Y. 1996) (quoting *Peters Griffin Woodward, Inc., v. WCSC, Inc.*, 452 N.Y.S.2d 599, 600 (1st Dep't 1982)); *see also In re Chateaugay Corp.*, 10 F.3d 944, 958 (2d Cir. 1993). However, Defendants misconstrue Plaintiffs' theory of liability.

Plaintiffs contend that the Purchase Agreement is not a valid contract because Defendants fraudulently induced them to execute it. These are essentially tort claims sounding in fraud. *See New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 316 (N.Y. 1995) ("Where a party has fraudulently induced the plaintiff to enter into a contract, it may be liable in tort."); *see also Stewart v. Jackson & Nash*, 976 F.2d 86, 88 (2d Cir. 1992) ("[U]nder New York law it is elementary that where a contract or transaction was induced by false representations, the representations and the contract are distinct and separable." (internal quotations and alterations omitted)). Granting Plaintiffs the inferences to which

-12-

they are entitled, these alleged torts arise out of Defendants' disclosure obligations based on their superior knowledge of the Cunningham Settlement. *Cf. Elma RT v. Landesmann Int'l Mktg. Corp.*, No. 98 Civ. 3662 (LMM), 2000 WL 297197, at *4 (S.D.N.Y. Mar. 22, 2000) ("To determine whether an action for conversion (or any other tort) exists in addition to an action for breach of contract, a court must . . . . determine whether defendants had a duty separate from any duties imposed by defendants' contractual obligations."). Therefore, despite the putative existence of the Purchase Agreement, Plaintiffs may maintain a conversion claim at the pleadings stage. Accordingly, Defendants' motions to dismiss Plaintiffs' conversion claim are denied.

### D. Unjust Enrichment

Defendants likewise argue that Plaintiffs' unjust enrichment claim must be dismissed because the claim "aris[es] out of an alleged breach of the Asset Purchase Agreement." (Griffin Mem. at 18; *see also* Francis Mem. at 12.) However, a plaintiff may, under some circumstances, "simultaneously allege breach of contract and unjust enrichment in its complaint." *Bazak Int'l Corp. v. Tarrant Apparel Group*, 347 F. Supp. 2d 1, 4 (S.D.N.Y. 2004). This principle holds under circumstances where, as here, there is a dispute regarding the validity of the contract at issue. *See Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 663 (2d Cir. 1996); *see also Net2Globe Int'l, Inc. v. Time Warner Telecom of New York*, 273 F. Supp. 2d 436, 466 (S.D.N.Y. 2003); *Bridgeway Corp. v. Citibank, N.A.*, 132 F. Supp. 2d 297, 305 (S.D.N.Y. 2001); *Ox v. Union Cent. Life Ins. Co.*, No. 94 Civ. 4754 (RWS), 1995 WL 634991, at *6 (S.D.N.Y. Oct. 27, 1995) ("[A]s long as a factual issue remains as to the fraud claim, recovery under a theory of unjust enrichment may be proper, even in the presence of an alternative breach of contract claim.").

In light of the parties' dispute regarding whether a valid contract exists, the unjust enrichment claim cannot be dismissed as a matter of law. *Cf. Law Debenture v. Maverick Tube Corp.*, No. 06 Civ. 14320 (RJS), 2008 WL 4615896, at *12 (S.D.N.Y. Oct. 15, 2008) ("[T]he existence of a *valid and binding contract* governing the subject matter at issue in a particular case *does* act to preclude a claim for unjust enrichment . . . ." (first emphasis added)). Accordingly, Defendants' motions as to Plaintiffs' unjust enrichment claim are denied.

### E. Implied Covenant of Good Faith And Fair Dealing

Lastly, Griffin argues that Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing (the "implied covenant") should be dismissed because Plaintiffs have not alleged that Griffin was a party to the Purchase Agreement or that Defendants obstructed the performance of the Purchase Agreement after it was executed. (Griffin Mem. at 18.)

Griffin's first argument mischaracterizes the Complaint. Plaintiffs allege that they "entered into the Purchase Agreement with World Logistics, whereby World Logistics, Francis *and Griffin* undertook the obligation to act in good faith and deal fairly with the Plaintiffs." (Compl. ¶ 43.) There is not an executed version of the Purchase Agreement

-13-

before the Court, and the Court must assume the truth of Plaintiffs' allegations. Accordingly, Griffin's argument that he was not a party to the Purchase Agreement is unavailing in a motion under Rule 12(b)(6).

With respect to Griffin's second argument, "[u]nder New York law, a covenant of good faith and fair dealing is implicit in all contracts during the course of contract performance." *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 98 (2d Cir. 2007) (citing *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (N.Y. 1995)). "This implied covenant of good faith and fair dealing is limited to performance under a contract, and does not encompass future dealings or negotiations between the parties." *Sch. Dist. of City of Erie v. J.P. Morgan Chase Bank*, Nos. 08 Civ. 07688 (LAP), 08 Civ. 07982 (LAP), 2009 WL 234128, at *5 (S.D.N.Y. Jan. 30, 2009). Thus, "[t]o state a cause of action for breach of the implied covenant of good faith and fair dealing, 'the plaintiff must allege facts which tend to show that the defendant sought to prevent performance of the contract or to withhold its benefits from the plaintiff.'" *Dweck Law Firm, L.L.P. v. Mann*, 340 F. Supp. 2d 353, 358 (S.D.N.Y. 2004) (quoting *Aventine Inv. Mgmt., Inc. v. Canadian Imperial Bank of Commerce*, 697 N.Y.S.2d 128, 130 (2d Dep't 1999)).

Defendants' alleged omissions regarding the Cunningham Settlement cannot serve as the basis for Plaintiffs' claims regarding the implied covenant because those omissions predated the execution of the Purchase Agreement. "Parties cannot breach a contract's implied promise of good faith and fair dealing before the contract is entered into." *Echostar DBS Corp. v. Gemstar-TV Guide Int'l, Inc.*, No. 05 Civ. 8510 (DAB), 2007 WL 438088, at *8 (S.D.N.Y. Feb. 8, 2007). However, Plaintiffs also allege that Defendants prevented them from obtaining the benefit of the bargain in the Purchase Agreement by making affirmative misrepresentations, and then transferring both physical assets and rights to certain assets to Cunningham in bad faith. (Compl. ¶¶ 30, 31.) Plaintiffs allege that, through this transfer, Defendants prevented them from receiving the benefit of the bargain contemplated by the Purchase Agreement. (*Id.*) "'[W]hether particular conduct violates or is consistent with the duty of good faith and fair dealing necessarily depends upon the facts of the particular case, and is ordinarily a question of fact to be determined by the jury or other finder of fact.'" *Tractebel Energy Mktg.*, 487 F.3d at 98 (quoting 23 Williston on Contracts § 63:22 (4th ed. 2006)). Accordingly, Griffin's motion to dismiss Plaintiffs' claim for breach of the implied covenant is denied.

## IV. CONCLUSION

For the reasons stated above, both Defendants' motions to dismiss are denied in their entirety. The Clerk of the Court is respectfully directed to terminate the motions docketed as document numbers 9 and 13.

SO ORDERED.

*/s/ Richard J. Sullivan*
RICHARD J. SULLIVAN
United States District Judge

Dated: March 20, 2009
New York, New York

-14-

\*       \*       \*

Plaintiffs are represented by William Joseph Davis, Scheichet & Davis, P.C., 767 Third Avenue, 24th Floor, New York, New York 10017. Defendants are represented by Juan Eneas Monteverde, Levi & Korsinsky, LLP, 39 Broadway, Suite 1601, New York, New York 10006 and Vincent Coppola, Pribanic & Pribanic, 513 Court Place, Pittsburgh, Pennsylvania 15219.